# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LOUIS BRANCH,

Plaintiff,

v.

N. GRANNIS, et al.,

Defendants.

/

CASE NO. 1:08-cv-01655-SKO PC

ORDER REQUIRING PLAINTIFF EITHER TO FILE AMENDED COMPLAINT OR TO NOTIFY COURT OF WILLINGNESS TO PROCEED ONLY ON CLAIMS FOUND TO BE COGNIZABLE

(Doc. 13)

RESPONSE DUE WITHIN 30 DAYS

Plaintiff Louis Branch ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is currently incarcerated at Soledad Correctional Training Facility ("CTF"). Plaintiff is suing under Section 1983 for the violation of his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff names N. Grannis (Chief of Inmate Appeals), K. Mendoza-Powers (Warden, ASP), A. Mancinas (Classification and Parole Representative, ASP), D. Umphenour (Officer, ASP), and Does 1 and 2 (Officers, ASP) as defendants. For the reasons set forth below, the Court finds that Plaintiff's complaint states only some cognizable claims for relief. The Court will order Plaintiff to either notify the Court of his willingness to proceed only on the claims found to be cognizable, or to file an amended complaint which cures the deficiencies in his non-cognizable claims.

///

///

**I. Screening Requirement**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

In determining whether a complaint fails to state a claim, the Court uses the same pleading standard used under Federal Rule of Civil Procedure 8(a). Under Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570.) "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Twombly, 550 U.S. at 557.) Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (quoting Twombly, 550 U.S. at 555).

**II. Background**

**A. Procedural Background**

On July 7, 2008, Plaintiff filed a complaint in the District Court for the Eastern District of California. (Doc. 1.) On April 7, 2009, the Court screened Plaintiff's complaint. (Doc. 10.) The court found that Plaintiff's complaint stated some cognizable claims and gave Plaintiff the option

to either file an amended complaint that cured the deficiencies in his non-cognizable claims, or notify the Court that Plaintiff wished to only proceed on the cognizable claims. On 05/11/2009, Plaintiff submitted an Amended Complaint. (Doc. 13.) The Court will now consider Plaintiff's Amended Complaint.

**B. Factual Background**

Plaintiff claims that Defendants retaliated against Plaintiff because Plaintiff participated in an investigation into misconduct within the CDCR. Plaintiff alleges that in August 2002, the Office of the Inspector General formally investigated Plaintiff's complaints that the CDCR had a policy of retaliating against Plaintiff's "exercise of the right to seek redress." (Am. Compl. 4:26-5:7.) Plaintiff was housed at San Quentin State Prison ("SQSP") at the time and alleged that CDCR officials repeatedly transferred Plaintiff, vandalized his personal property, committed "criminal fraud and forgery," accused Plaintiff of "bogus disciplinaries[sic]," and "incit[ed] violence through calumny and obloquy," in retaliation against Plaintiff's complaints. (Am. Compl. 4:26-5:7.)

Plaintiff was transferred to Avenal State Prison ("ASP") and housed there from November 2002 through May 2003. Plaintiff claims that officials at ASP retaliated against Plaintiff for his participation in the Inspector General's investigation by "filing a fraudulent chronological report ostensibly referencing documentation from plaintiffs[sic] case records that in fact did not exist," denying Plaintiff access to the law library, physically attacking Plaintiff, and confiscating Plaintiff's property and distributed it to other prisoners while identifying Plaintiff as a "snitch." (Am. Compl. 5:11-22.) Plaintiff filed complaints against ASP officials. Plaintiff claims that ASP officials then "confederated" with a CDCR official and arranged for Plaintiff's transfer to CTF-Soledad with Plaintiff's "known documented enemy gang member." (Am. Compl. 5:25-6:2.)

Plaintiff was housed at CTF-Soledad from May 2003 through November 2003. Plaintiff informed CTF-Soledad officials about the presence of the enemy gang member, but his requests to be transferred to SQSP or CMF-Vacaville were refused. Plaintiff claims that CTF-Soledad officials "staged and set-up a physical confrontation between plaintiff and his known documented enemy." (Am. Compl. 6:15-16.) CTF-Soledad officials also confiscated Plaintiff's property and gave it to

///

other inmates. Plaintiff was allegedly transferred to Folsom State Prison ("FSP") pursuant to a habeas petition filed in Monterey Superior Court.

Plaintiff was housed at FSP from November 2003 to May 2004. Upon his arrival at FSP, Plaintiff requested a transfer to SQSP or CMF-Vacaville. Plaintiff's request was approved by the facility captain. However, Plaintiff's counselor forged the captain's signature and "confederated with the very same CDCR official who had previously authorized plaintiffs[sic] 5/2003 transfer to Soledad, to deny the SQSP/CMF-Vacaville transfer recommendation ordered by the Facility Captain." (Am. Compl. 6:28-7:4.) Plaintiff filed a complaint accusing his counselor and the CDCR official of committing fraud. In April 2004, Plaintiff alleges that his counselor "machinated plaintiffs[sic] "Emergency" transfer to Avenal State Prison in direct violation of CDCR's "Emergency" transfer protocols." (Am. Compl. 7:8-10.) When Plaintiff refused to board the bus to ASP because he feared for his safety, he was carried from his cell to the bus and taken to ASP.

Plaintiff was housed again at ASP between May 2004 and July 2004. When Plaintiff arrived at ASP, he wrote a letter to Defendant Mendoza-Powers informing him about Plaintiff's "safety concerns due to retaliatory animus of defendant Mancinas." (Am. Compl. 7:18-24.) Plaintiff also informed Mendoza-Powers about the retaliatory transfer from ASP to CTF-Soledad in May 2003 and the current "unlawful" transfer from FSP to ASP. (Am. Compl. 7:18-24.) Plaintiff also requested a transfer to San Quentin or CMF-Vacaville. Mendoza-Powers did not respond to Plaintiff's letter.

Plaintiff then filed a grievance against Defendant Mancinas accusing Mancinas of "Inexcusable Neglect of Duty for MANCINAS' failure to remedy plaintiffs[sic] inappropriate transfer from Folsom to Avenal." (Am. Compl. 7:25-28.) In May 2004, Plaintiff informed the Classification Committee about his safety concerns. The Committee referred Plaintiff's case to Defendant Mancinas. Mancinas "failed and refuse[d] to perform his duty to 'effect adherence to classification procedures and goals' for Folsom's inappropriate 'Emergency' transfer to Avenal." (Am. Compl. 8:10-12.)

In June 2004, Plaintiff submitted a declaration as an eyewitness on behalf of a fellow inmate who alleged that he was attacked by an ASP officer. Defendant Umphenour confronted Plaintiff and told Plaintiff that he would be "dealt with" for submitting a false declaration against an officer. (Am.

Compl. 8:17-19.) Plaintiff claims that he was then transferred five times in a period of two weeks "amid the calumny and obloquy that plaintiff was a 'snitch' and a 'baby raper.'" (Am. Compl. 8:20-23.) Plaintiff complains that the repeated transfers "virtually guaranteed" that Plaintiff's complaints would be ignored. Plaintiff was eventually transferred to "Building 250" where he was stabbed four times, bludgeoned in the head, and beaten into semi-consciousness while Defendants Umphenour, Doe 1, and Doe 2 observed. Plaintiff claims that Umphenour, Doe 1 and Doe 2 did not intervene by activating the alarm or ordering plaintiff's assailants to stop. Plaintiff was hospitalized and then placed in segregation. Plaintiff was transferred to Mule Creek State Prison ("MCSP") in August 2004.

When Plaintiff arrived at MCSP, MCSP officials indicated that Plaintiff's property had been sabotaged. Plaintiff claims that it was Umphenour's responsibility to gather and inventory Plaintiff's personal property. Plaintiff submitted a grievance complaining about Mendoza-Powers, Mancinas, and Umphenour, but the grievance was denied as untimely by Defendant Grannis. In June 2005, Plaintiff was scheduled to be transferred back to ASP. Plaintiff's requests to cancel the transfer due to safety concerns was rejected by MCSP officials. In January 2005, the transfer was canceled by MCSP Associate Warden Bunnell.[1]

## III. Discussion

### A. First Amendment

Plaintiff alleges Defendants retaliated against him in violation of the First Amendment. In the prison context, allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a Section 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985); *see also* Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir. 1995). "[A] viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

---

[1] The dates June 2005 and January 2005 are as they appear in Defendant's Amended Complaint. The Court notes the chronological conflict of the dates and assumes Defendant intended the dates to be June 2005 and January 2006.

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of retaliation against a prisoner's First Amendment right to file a prison grievance is sufficient to support a claim under Section 1983. Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003).

Such claims must be evaluated in light of the deference that must be accorded to prison officials. *See* Pratt, 65 F.3d at 807; *see also* Vance v. Barrett, 345 F.3d 1083, 1093 (9th Cir. 2003). The prisoner must submit evidence to establish a link between the exercise of constitutional rights and the allegedly retaliatory action. *Compare* Pratt, 65 F.3d at 807 (finding insufficient evidence) *with* Valandingham v. Bojorquez, 866 F.2d 1135, 1138-39 (9th Cir. 1989) (finding sufficient evidence).

Plaintiff fails to state a cognizable retaliation claim against Defendant Grannis. Plaintiff alleges that Grannis denied Plaintiff's administrative appeal as untimely. However, Plaintiff has provided absolutely no factual support for the contention that Grannis rejected Plaintiff's appeal because of Plaintiff's exercise of protected conduct.

Plaintiff also fails to state a cognizable retaliation claim against Defendant Mendoza-Powers. Plaintiff's only allegation against Mendoza-Powers is that Plaintiff wrote letters to Mendoza-Powers requesting a transfer to SQSP or CMF-Vacaville and Mendoza-Powers ignored the requests. Plaintiff fails to provide any factual support for the conclusion that Mendoza-Powers ignored Plaintiff's requests because of Plaintiff's exercise of protected conduct. It is Plaintiff's burden to allege sufficient facts to cross the line between possibility and plausibility. See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Plaintiff deduces that, in deliberately ignoring his letters, Mendoza-Powers' actions constitute an adverse response to Plaintiff's protected conduct. However, as alleged, Plaintiff's conclusion does not cross the line between possibility and plausibility; it is mere speculation.

Plaintiff fails to state a cognizable retaliation claim against Defendant Mancinas. Plaintiff provides scant details of anything that Mancinas did or failed to do. Plaintiff alleges that he had "safety concerns due to the retaliatory animus of defendant MANCINAS." (Am. Compl. 7:20-21.) Plaintiff does not explain the basis for his safety concerns. Plaintiff complains that Mancinas

"fail[ed] to remedy plaintiffs[sic] inappropriate transfer from Folsom to Avenal." (Am. Compl. 7:25-28.) However, Plaintiff provides no factual support for his contention that Mancinas' failure to "remedy" Plaintiff's transfer was based on Mancinas' "retaliatory animus." Plaintiff's vague allegations regarding "the calumny and obloquy that plaintiff was a 'snitch' and a 'baby raper'" do not sufficiently support the conclusion that Mancina's acted in retaliation against Plaintiff's protected conduct. Plaintiff provides no allegations to suggest that Mancinas was personally involved with spreading the rumor that Plaintiff was a "snitch" or a "baby raper." Similarly, Plaintiff's allegations regarding retaliatory treatment he received at ASP between November 2002 and May 2003 do not sufficiently support the conclusion that Mancinas acted in retaliation. Plaintiff provides no facts to suggest that Mancinas was personally involved with the events that occurred between November 2002 and May 2003.

Plaintiff also attempts to hold Mendoza-Powers and Mancinas liable for retaliation because Plaintiff's "verbal and written pleas and entreaties to defendants POWERS and MANCINAS resulted in plaintiffs[sic] transfer to another Facility or Building, while the calumny and obloquy of 'snitch' and 'baby raper' continued unabated." Plaintiff provides no factual support for his conclusion that his written and verbal requests to Mendoza-Powers and Mancinas "caused" the transfers. Plaintiff does not allege that Mendoza-Powers or Mancinas were personally involved in transferring Plaintiff or were personally involved in spreading the rumor that Plaintiff was a "snitch" or a "baby raper." Further, Plaintiff fails to adequately explain how his transfers to other facilities and buildings could be characterized as an "adverse action." Plaintiff claims that the transfers "virtually guaranteed" that Plaintiff's administrative grievances would be lost or ignored. It is unclear how a transfer to another building would have any effect on the processing of Plaintiff's grievances. It is implausible to assume that the prison would completely lose track of Plaintiff's grievances merely because Plaintiff was transferred to another building.

Plaintiff does state a plausible retaliation claim against Defendants Umphenour, Doe 1 and Doe 2. Plaintiff claims that he helped another inmate by filing a declaration on his behalf related to an incident where the other inmate was attacked by an ASP official–an exercise of Plaintiff's First Amendment right to free speech that could also be construed as an exercise of Plaintiff's protected

right to file grievances against the government. Plaintiff claims that Umphenour confronted Plaintiff and told Plaintiff that he would be "dealt with." Plaintiff claims that he was attacked and stabbed later, while Defendants Umphenour, Doe 1, and Doe 2 observed without intervening. Plaintiff also suggests that Umphenour "sabotaged" Plaintiff's property during his transfer to MCSP. Plaintiff has alleged enough facts to plausibly support the conclusion that Umphenour, Doe 1, and Doe 2 retaliated against Plaintiff for helping another inmate litigate his claims.

**B. Eighth Amendment**

Plaintiff alleges Defendants violated his rights under the Eighth Amendment. The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies 'broad and idealistic concepts of dignity, civilized standards, humanity and decency.'" Estelle v. Gamble, 429 U.S. 97, 102 (1976) (quoting Jackson v. Bishop, 404 F.2d 571, 579 (8th Cir. 1968)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a sufficiently culpable state of mind. Farmer v. Brennan, 511 U.S. 825, 834 (1994) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The objective requirement that the deprivation be "sufficiently serious" is met where the prison official's act or omission results in the denial of "the minimal civilized measure of life's necessities." Id. (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). The subjective requirement that the prison official has a "sufficiently culpable state of mind" is met where the prison official acts with "deliberate indifference" to inmate health or safety. Id. (quoting Wilson, 501 U.S. at 302-303). A prison official acts with deliberate indifference when he/she "knows of and disregards an excessive risk to inmate health or safety." Id. at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.

Plaintiff alleges Defendants Umphenour, Doe 1, and Doe 2 violated Plaintiff's right under the Eighth Amendment to be free from cruel and unusual punishment by their failure to prevent other inmates from stabbing Plaintiff. Prison officials have a duty to take reasonable steps to protect inmates from physical abuse. Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, the prisoner must establish that prison officials were "deliberately

indifferent" to serious threats to the inmate's safety. *See* Farmer, 511 U.S. at 834. To demonstrate that a prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that "the official [knew] of and disregard[ed] an excessive risk to inmate... safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Plaintiff alleges that Defendants Umphenour, Doe 1, and Doe 2 observed Plaintiff as he "was stabbed four times, blugeoned [sic] about the head and beaten into semi-consciousness... but did not activate the alarm, intervene, or command Plaintiff's assailants to desist." (Am. Compl. 9:4-8.) Plaintiff has sufficiently alleged that Defendants Umphenour, Doe 1, and Doe 2 were deliberately indifferent to a serious threat to his safety and states a cognizable claim against Defendants Umphenour, Doe 1, and Doe 2.

Plaintiff claims that Defendants Mendoza-Powers and Mancinas ignored Plaintiff's "verbal and written pleas." However, Plaintiff provides scant details about the timing and contents of his "verbal and written pleas" and the Court finds that Plaintiff has not alleged sufficient facts to support a plausible claim for relief. It is not clear what Plaintiff told Mendoza-Powers and Mancinas. Plaintiff does not allege that he informed Mendoza-Powers or Mancinas of any specific threat to Plaintiff's safety. Plaintiff must allege facts that demonstrate that Mendoza-Powers and Mancinas were aware of a substantial threat to Plaintiff's safety, which they ignored. Although Plaintiff alleges that he was seriously injured in a stabbing incident, Plaintiff does not claim to have known about the incident in advance, and has not alleged any facts that suggest Mendoza-Powers or Mancinas knew about the incident in advance. If Plaintiff's "verbal and written pleas" did not contain sufficiently specific information to put Mendoza-Powers and Mancinas on notice of a substantial threat to Plaintiff's safety, their inaction does not rise to the level of a constitutional violation. Plaintiff fails to state any cognizable Eighth Amendment claims against Defendants Mendoza-Powers or Mancinas.

Similarly, Plaintiff attempts to hold Grannis liable for delaying and denying Plaintiff's administrative appeals. Plaintiff alleges that Grannis denied Plaintiff's grievance after Plaintiff was transferred to MCSP and long after the stabbing incident. There is no indication from Plaintiff's

complaint that Grannis could have done anything to intervene because by the time Plaintiff filed his appeal, Plaintiff was transferred to MCSP and presumably away from any threat to his safety. Plaintiff fails to identify how Grannis' action exposed Plaintiff to any danger. Plaintiff fails to state a cognizable Eighth Amendment claim against Defendant Grannis.[2]

**C. Fourteenth Amendment**

Plaintiff fails to raise a claim that adequately supports a violation of Plaintiff's Fourteenth Amendment rights. "[W]here a particular amendment provides an explicit textual source of constitutional protection against a particular sort of governmental behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's claims." Patel v. Penman, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted). The concept of due process under the Fourteenth Amendment is broad and wide-ranging. The Eighth Amendment provides a more explicit textual source of constitutional protection for Plaintiff's claims. Accordingly, Plaintiff's claims are analyzed under the Eighth Amendment. *See* discussion supra III.B. Plaintiff fails to state a separate claim under the Fourteenth Amendment.

**IV. Conclusion and Order**

Plaintiff's complaint states cognizable claims against Defendants Umphenour, Doe 1, and Doe 2 for deliberate indifference to a serious risk to Plaintiff's safety in violation of the Eighth Amendment. Plaintiff's complaint fails to state claims against any other defendants. The Court will provide Plaintiff with the opportunity to file an amended complaint curing the deficiencies identified by the Court in this order. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987). Plaintiff may not change the nature of this suit by adding new, unrelated claims in his amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).

---

[2] In the previous screening order, the Court found that Plaintiff's allegations against Defendants Mendoza-Powers, Mancinas, and Grannis were sufficient to support and Eighth Amendment claim. The previous screening order was issued before the Supreme Court decided Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009). The Court previously noted that Plaintiff's complaint was ambiguous as to the timing of his inmate appeals and whether Defendants had the opportunity to intervene to protect Plaintiff. The Court also accepted Plaintiff's unsupported conclusion that Mendoza-Powers and Mancinas exposed Plaintiff to a substantial risk of serious harm. It is clear after Iqbal that Plaintiff's allegations are not sufficient and Plaintiff must clarify the ambiguities in his complaint against the above referred Defendants and allege sufficient facts to support a plausible claim for relief. Id. at 1949. The Court finds that Plaintiff's claims are not cognizable under the standards set forth in Iqbal.

If Plaintiff does not wish to file an amended complaint and is agreeable to proceeding only on the claims identified in this order as cognizable, Plaintiff may so notify the Court in writing, and the Court will issue a recommendation for dismissal of the other claims and defendants, and will forward Plaintiff one (1) summonses and one (1) USM-285 forms for completion and return.[3] Upon receipt of the forms, the Court will direct the United States Marshal to initiate service of process.

If Plaintiff opts to amend, his amended complaint should be brief. Fed. R. Civ. P. 8(a). Plaintiff must identify how each individual defendant caused the deprivation of Plaintiff's constitutional or other federal rights: "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988). With respect to exhibits, while they are permissible if incorporated by reference, Fed. R. Civ. P. 10(c), they are not necessary in the federal system of notice pleading, Fed. R. Civ. P. 8(a). In other words, it is not necessary at this stage to submit evidence to prove the allegations in Plaintiff's complaint because at this stage Plaintiff's factual allegations will be accepted as true.

Although Plaintiff's factual allegations will be accepted as true and that "the pleading standard Rule 8 announces does not require 'detailed factual allegations,'" "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009), (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

Finally, Plaintiff is advised that an amended complaint supercedes the original complaint. Forsyth v. Humana, Inc., 114 F.3d 1467, 1474 (9th Cir. 1997); King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987). The amended complaint must be "complete in itself without reference to the prior or superceded pleading." Local Rule 220. Plaintiff is warned that "[a]ll causes of action alleged in

[3]The Court will only provide Plaintiff with service documents for Defendant Umphenour. The Court will provide Plaintiff with service documents for Doe 1 and Doe 2 when Plaintiff is able to identify Doe 1 and Doe 2 and provide the Court with sufficient information to effect service of process on said Defendants.

an original complaint which are not alleged in an amended complaint are waived." King, 814 F.2d at 567 (citing London v. Coopers & Lybrand, 644 F.2d 811, 814 (9th Cir. 1981)); accord Forsyth, 114 F.3d at 1474. In other words, even the claims that were properly stated in the original complaint must be completely stated again in the amended complaint.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;

2. Within **thirty (30) days** from the date of service of this order, Plaintiff must either:

   a. File an amended complaint curing the deficiencies identified by the Court in this order, or

   b. Notify the Court in writing that he does not wish to file an amended complaint and wishes to proceed only against Defendants Umphenour, Doe 1, and Doe 2 for violation of the Eighth Amendment; and

3. If Plaintiff fails to comply with this order, this action will be dismissed for failure to obey a court order.

IT IS SO ORDERED.

**Dated: June 28, 2010**

**/s/ Sheila K. Oberto**
UNITED STATES MAGISTRATE JUDGE