1

2

3

4

5

6

7

8

9

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

10   **LOUIS BRANCH**,                         1:08-cv-01655-AWI-SAB (PC)

11                    Plaintiff,              **ORDER DECLINING TO ADOPT**
                                             **FINDINGS AND**
12            v.                             **RECOMMENDATIONS**

13   **D. UMPHENOUR, et al.**,

14                    Defendants.            **ORDER DENYING DEFENDANT'S**
                                             **MOTION FOR SUMMARY**
15                                           **JUDGMENT**

16                                           **ORDER DENYING PLAINTIFF'S**
                                             **MOTION FOR RECONSIDERATION**
17
     _____/      (Docs. 138, 172, and 177)
18

19        Plaintiff Louis Branch is a California state prisoner proceeding in this civil rights action

20   pursuant to 42 U.S.C. 1983. Generally, Plaintiff contends that Defendants Alvarez, Szalia, and

21   Umphenour were deliberately indifferent to Plaintiff's safety in violation of the Eighth

22   Amendment in watching but not intervening while Plaintiff was bludgeoned on the head, beaten

23   to semi-consciousness, and stabbed four times by other inmates. Additionally, Plaintiff contends

24   that Defendant Umphenour allowed (or caused) this encounter to retaliate against Plaintiff, in

25   violation of the First Amendment, for having submitted a declaration attesting that Plaintiff

26   witnessed an officer at Avenal state prison batter an inmate.

27        On September 2, 2014, Defendants Alvarez, Szalia, and Umphenour moved for summary

28   judgment contending, in part, that Plaintiff failed to exhaust his administrative remedies. Doc.

1   138. After providing the parties the opportunity to brief the issue, the Magistrate Judge issued a

2   Findings and Recommendations, finding that Plaintiff failed to exhaust and recommending that

3   this Court enter summary judgment in Defendants' favor. Plaintiff filed objections to the

4   Findings and Recommendations on July 20, 2015. In accordance with the provisions of 28

5   U.S.C. § 636 (b)(1)(B) and Local Rule 304, this Court has conducted a *de novo* review of this

6   case.  Having carefully reviewed the entire file, including Plaintiff's objections, this Court

7   declines to adopt the Findings and Recommendations. For the following reasons, this Court will

8   deny Defendants' motion for summary judgment.

9        Plaintiff has also filed a motion for extension of time to request reconsideration of the

10  Magistrate Judge's Findings and Recommendations. Doc. 177. Because that order is not final

11  and because this Court will not adopt those Findings and Recommendations, Plaintiff's motion is

12  DENIED as moot.

13  **A. Legal Standard**

14       Summary judgment is appropriate when there is "no genuine dispute as to any material

15  fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Summary

16  judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

17  to the determination of the issues in the case, or in which there is insufficient evidence for a jury

18  to determine those facts in favor of the nonmovant. *Crawford–El v. Britton*, 523 U.S. 574, 600,

19  (1998); *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–50 (1986). Simply, a summary

20  judgment motion asks whether the evidence presents a sufficient disagreement to require

21  submission to a jury.

22       The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

23  or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323–24 (1986). Thus, the rule functions to

24  "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

25  trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)

26  (quoting Fed.R.Civ.P. 56(e) advisory committee's note on 1963 amendments). Procedurally,

27  under summary judgment practice, the moving party bears the initial responsibility of presenting

28  the basis for its motion and identifying those portions of the record, together with affidavits, if

any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir.2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed.R.Civ.P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir.1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990).

**B. Exhaustion of Administrative Remedies**

> The [Prison Litigation Reform Act] mandates that inmates exhaust all available administrative remedies before filing "any suit challenging prison conditions," including, but not limited to, suits under § 1983. [citation]. An inmate is required to exhaust only *available* remedies. [citation]. To be available, a remedy must be available "as a practical matter"; it must be "capable of use; at hand." [citation].

*Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir.) *cert. denied sub nom. Scott v. Albino*, 135 S. Ct. 403 (2014) (emphasis in original). Generally, a claim is not exhausted until it is appealed through the Third Level.[1] The PLRA exhaustion requirement is not jurisdictional but rather creates an affirmative defense that defendants must plead and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). The PLRA makes clear that a determination whether exhaustion has occurred is dictated not by the PLRA, but by the procedures set forth by the prison. 42 U.S.C. § 1997(e)(a). Thus, when an inmate has obtained a grant of relief (even if nominally partial) which grants all of the relief available to the inmate as to that subject matter, under CDC regulations, the inmate has exhausted the administrative remedies.

---

[1] For further description of the levels of CDC administrative review, *see* Doc. 172 at 5.

Plaintiff filed two sets of administrative grievances in the timeframe of the assault. It is clear that the only inmate appeal accepted by the California Department of Corrections ("CDC")[2] Office of Appeals for Third Level review was Appeal No. ASP-M-04-1272, originally filed on June 4, 2004 – approximately one month before his assault. At the first level, that inmate complaint only addressed alleged failures by prison personnel to adhere to classification procedures and goals. Thereafter, Plaintiff appealed the denial of his inmate complaint and added allegations regarding retaliation in the form of organizing the assault. The appeal substantively addressed only the classification grievance and denied the retaliation claim for having exceeded the scope of the initial complaint. *See* R.Briggs Decl. ¶ 13 at Doc. 138-5 ("Briggs Decl."), Exh. 3; K.Donaldson Decl. ¶ 9 at Doc. 138-4 ("Donaldson Decl."). The procedural denial was appropriate. *See Sapp v. Kimbrell*, 623 F.3d 813, 825 (9th Cir.2010) ("[A]n inmate must first present a complaint at the first level of the administrative process."); *Simpson v. Justin*, 2013 WL 3070625, *4 (E.D. Cal. June 17, 2013); *Coleman v. CDCR*, 2012 WL 2339114, *3 (E.D. Cal. June 19, 2012). That set of grievances did not exhaust Plaintiff's administrative remedies.

In the second set of grievances Plaintiff addressed the assault by inmates and alleged retaliation by prison personnel at issue in this action. *See* Briggs Decl. ¶ 12; Donaldson Decl. ¶ 8. Plaintiff sought: (1) photocopies of certain documents; (2) the Warden's "personal response required by 15 CCR 3084.5(e)(2); (3) an OIA investigation; and (4) that no classification or transfer reprisals be imposed. Briggs Decl., Exh. 2; Doc. 174 at 21. That grievance was designated a "staff complaint" and assigned Appeal No. ASP-M-04-2265. Staff complaints do "not proceed through the usual grievance procedures." *Willis v. Folsom State Prison Medical Staff*, 2012 WL 3283457, *4 (E.D. Cal. Aug. 10, 2012). A staff complaint is often routed in the first instance to the Second Level. *Id.* at *4. Such was the case here, where the relief was "partially granted" on October 27, 2004.[3] Specifically, Warden Powers referred Plaintiff's concerns to the Office of Investigative Service ("OIS") for investigation. Briggs Decl. at Exh. 2.

---

[2] The California Department of Corrections has since been redesignated the California Department of Corrections and Rehabilitation.
[3] The Warden's response does not appear to have been returned to Plaintiff until November 15, 2004. *See* Doc. 174 at 24.

4

1  Despite the "partial grant[]" language, an inmate can receive no other relief for a staff complaint

2  other than CDC initiation of an investigation. *Willis*, 2012 WL 3283457, *4 (citing *Brown v.*

3  *Valoff*, 422 F.3d 926, 937-938 (9th Cir. 2005).

4       The Ninth Circuit has held that "[a]n inmate has no obligation to appeal from a grant of

5  relief, or a partial grant that satisfies him, in order to exhaust his administrative remedies."

6  *Harvey v. Jordan,* 605 F.3d 681, 685 (9th Cir.2010); *Morris v. Bradford*, 2015 WL 135925, at *7

7  (E.D. Cal. Jan. 9, 2015) *report and recommendation adopted* 2015 WL 1014608 (E.D. Cal. Mar.

8  4, 2015). The Ninth Circuit has also made clear that "there can be no 'absence of exhaustion'

9  unless *some* relief remains available.'" *Brown v. Valoff,* 422 F.3d 926, 937 (9th Cir.2005);

10  *Morris*, 2015 WL 135925, at *7. Whether administrative remedies are "available" hinges on

11  whether the relevant prison officials have the authority to take some action, despite the fact that

12  they are unable to provide an inmate with the form of relief he requests. *Booth v. Churner*, 532

13  U.S. 731, 741 (2001); *See also*, *Albino v. Baca*, 697 F.3d at 1031-32 ([A]waiting "the results of

14  investigations triggered by the grievance process but outside of it can serve the purposes of the

15  exhaustion requirement." (quoting *Brown,* 422 F.3d at 936-37)).

16       Two cases on either side of this matter were confronted by the Ninth Circuit in *Brown v.*

17  *Valoff*, 422 F.3d 926 (9th Cir. 2005) (consolidating two district court cases for purposes of

18  appeal). In *Brown*, the Ninth Circuit accepted two interlocutory appeals – Brown and Hall; the

19  district court in both instances had found that the inmate plaintiff had exhausted administrative

20  remedies after completion of the staff complaint process. In the former matter, the complaint

21  filed was classified as a "staff complaint," and was "Partially Granted"[4] at the Second Level in

22  that the appeal was to be investigated by the Office of Internal Affairs. *Id*. at 938. The Second

23  Level "memorandum did not counsel that any further review was available." *Id*. at 937. Brown

24  did not appeal the matter any further; when the staff complaint procedure concluded, Brown filed

25  suit in the district court. *Id*. at 940. The Ninth Circuit noted a 1998 Administrative Bulletin

26

27  [4] The Court noted that whether the appeal was "partially granted" or "granted" was dependent on the action sought
by the inmate, not the availability of further review or relief. Brown's relief was partially denied insofar as he sought

28  monetary damages. However, because the relief that he sought arose from the subject matter of the staff complaint it
could proceed no further in the appeals process.

issued by CDC, advising appeals processing staff that "[w]hen an appeal alleges staff misconduct and other issues; e.g. dismissal of a Rules Violation Report or property loss ... the inmate/parolee shall be notified ... that the other issue(s) must be appealed separately." *Id.* at 938. It then found that the Staff Complaint process, when triggered, results in an extensive and confidential investigation which precludes an inmate from proceeding any further in the appeals process on the substance of the staff complaint. *Id.* at 938-939; *see Davis v. High Desert State Prison*, 2014 WL 530265, *3 (E.D. Cal. Feb. 7, 2014) ("Where a claim contained in an inmate's grievance is characterized by prison officials as a 'staff complaint' and processed through a separate confidential process, prison officials lose any authority to act on the subject of the grievance. [citation] Thus, the claim is exhausted when it is characterized as a 'staff complaint.' [citation]"); *Smith v. Allison*, 2014 WL 6608753, *10 (E.D. Cal. Nov. 19, 2014); *Thomas v. Pina*, 2013 WL 315248, *2 (E.D. Cal. Jan. 25, 2013) *but see Vaughn v. Hood*, 2015 WL 5020691, *7 (E.D. Cal. Aug. 15, 2015) ("Brown, however, does not establish a per se rule that the pendency of an internal investigation renders further administrative appeal unavailable.") Based on the absence of any indication that Brown was advised that any part of his claim was subject to appeal, and based on the extensive and exclusive nature of the staff complaint process, the Ninth Circuit determined that Brown had no further available relief and had exhausted his administrative remedies as to the subject matter of the staff complaint. *Brown*, 422 F.3d at 939.

The Ninth Circuit came to the opposite conclusion in *Hall*, highlighting two relevant differences. First, Hall's appeal, although designated a staff complaint, contained issues which were not the appropriate subject of a staff complaint – challenges to medical treatment given and deprivation of property; was marked "Denied"; and he was advised that if he was "dissatisfied with the decision," "further review" was available. *Brown*, 422 F.3d at 941. The medical challenges and property deprivation – the Second Level response indicated to Hall that those issues must be appealed separately – were raised in the district court complaint without separately exhausting. Second, the Ninth Circuit emphasized the fact that Hall initiated the proceedings prior to termination of the staff misconduct investigation, thereby not allowing a full opportunity to satisfy a primary purpose of the PRLA: resolving prisoner disputes without

1  litigation. *Id.* at 942. Between the prison's indication to Hall of the availability of further review

2  for the non-staff complaint portion of the grievance and the fact that his district court complaint

3  was filed prior to completion of the staff complaint investigation, the Ninth Circuit found that

4  Hall had not adequately exhausted his administrative remedies.

5        In this case, the Warden concluded the Second Level response by informing Plaintiff that

6  "[i]f [he was] dissatisfied with th[e] decision, [he could] complete Section "H" of [his] appeal

7  and forward it to" the Third (Director) Level. Doc. 174 at 23. Plaintiff did not appeal to the Third

8  Level (apparently detailing the perceived failures in the OIS investigation rather than seeking

9  additional relief) until January 24, 2005. Doc. 174 at 24. That appeal was filed approximately

10  two months prior to the conclusion of the OIS investigation. Even in light of the ongoing

11  investigation, the appeal was screened out as untimely at the Third Level for not having been

12  filed within 15 working days of the prisoner's receipt of the Second Level decision. *See* Cal.

13  Code Reg. § 3084.6(c).

14        It is a defendant's burden under *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) to

15  demonstrate what process remained available to a plaintiff should he have continued to pursue

16  his appeal. *See Brown*, 422 F.3d at 936-937. According to the CDC's own policies, as noted in

17  *Brown*, a prisoner "shall be notified ... that the other issue(s) *must* be appealed *separately*." [5]

18  *Brown,* 422 F.3d at 933, 938 (emphasis added). The boilerplate notice given in this case was

19  inadequate to inform the prisoner of that requirement.[6] Further, Defendants have not shown that

20

21  [5] A nearly identical regulation was added on December 13, 2010 and  is found at 15 CCR § 3084.9(i)(2). It reads, in whole:

22      When an appeal is accepted alleging staff misconduct that also includes any other issue(s), the

23      appeals coordinator at the time the appeal is accepted as a staff complaint shall notify the inmate
        or parolee that any other appeal issue(s) may only be appealed separately and therefore

24      resubmission of those issues is required if the intention is to seek resolution of such matters. Upon
        receiving such a notice, the inmate or parolee has 30 calendar days to submit separate appeal(s)
        regarding the other issue(s).

25  [6] A recent example of complaint notice appears in *Vaughn v. Hood*, 2015 WL 5020691, *7 (E.D. Cal. Aug. 15,
    2015), where the inmate was notified "that all issues unrelated to the allegation of staff misconduct must be appealed

26  separately." The inmate was also informed:

27      If you wish to appeal the decision and/or exhaust administrative remedies, you must submit your
        staff complaint appeal through all levels of appeal review up to, and including, the
        Secretary's/Third Level of Review. Once a decision has been rendered at the Third Level,

28      administrative remedies will be considered exhausted.
    *Id.*

any further appeal of the staff complaint would have been accepted. Plaintiff's administrative grievance was focused at the exact matter to be decided by the staff complaint – whether prison staff either caused the assault on Plaintiff or knew about the assault before or as it was happening and did nothing to prevent or stop it. Indeed, the notice given appears to indicate that if Plaintiff were satisfied that an investigation was being conducted, that he need not have appealed. Further, it is unlikely, and Defendants have not proven, that an appeal regarding the subject matter of the staff complaint was possible, especially in light of the fact that an investigation was granted and already being conducted. *See Brown*, 422 F.3d at 940 (finding that only relief available for that staff complaint is for the prison to conduct an OIS investigation). Once that investigation was completed, the process "did not involve any further appeals, [Plaintiff] had no obligation to pursue the third level appeal before proceeding to court." *Id*.

Defendant has not met its obligation to prove that further administrative appellate process was available to Plaintiff. Defendant's motion for summary judgment will be denied on that ground.

**B. Failure to Protect and Retaliation Claims**

Defendants' motion for summary judgment on the substance of Plaintiff's claims relies in large part upon disputed factual contentions. Plaintiff and Defendants have presented two distinct versions of the events leading up to the assault on Plaintiff.

*1. Facts*

Both parties agree that Defendant Umphenour and Plaintiff had an interaction earlier in the week of July 11, 2004. The content of that interaction is disputed. Defendants contend that Umphenour counseled Plaintiff against smoking. Defendants' Separate Statement of Undisputed Facts ("DSSUF") at ¶ 21; Declaration of D. Umphenour, Doc. 138-4 at 4-6, ("Umphenour Decl.") at ¶ 15. Umphenour later determined that Plaintiff had previously been counseled for smoking and issued a "counseling chrono (CDC 128-C)." *Id*. Plaintiff contends that he has not smoked since 1976 when his father died of lung cancer. Declaration of Louis Branch, Doc. 142 ("Branch Decl.") at ¶ 20. Instead, Plaintiff asserts that the interaction between Plaintiff and Umphenour earlier in the week was unrelated to smoking; Plaintiff claims that Umphenour told

8

1    Plaintiff that he would be "dealt with" for having submitted a false declaration to the warden

2    regarding witnessing another officer assault an inmate. Branch Decl. at ¶ 5.[7]

3         On July 11, 2004, Defendants Umphenour, Szalai, and Alvarez worked third watch (2:30

4    p.m. to 10:30 p.m.) in Housing Unit 250 at Avenal State Prison. Defendants' Separate Statement

5    of Undisputed Facts ("DSSUF") at ¶ 6. It is undisputed that at some time between 3:15 (Lt.

6    Marmolejo Clarification Report, Doc. 138-4 at 11) and 3:45 p.m. (Branch Decl. at ¶ 10) on that

7    date, Plaintiff met with Lieutenant Marmolejo to request a transfer from Housing Unit 250

8    because "he was having trouble with other inmates." Doc. 138-4 at 10. Beyond what is agreed

9    upon, Plaintiff alleges that Defendant Umphenour had called to obtain Lieutenant Marmolejo's

10   permission for the requested interview. Branch Decl. at ¶ 9. Plaintiff further alleges that

11   Lieutenant Marmolejo called Umphenour after the interview to inform Umphenour that "due to

12   the tension and hostility that [Plaintiff] reported," Lieutenant Marmolejo was rehousing Plaintiff

13   after the 4:45 p.m. institutional count. Branch Decl. at ¶ 11.

14        It is undisputed that Plaintiff returned to Housing Unit 250 at approximately 4:10 p.m.,

15   after the interview with Lieutenant Marmolejo. Defendant Umphenour contends that, shortly

16   before 4:30 p.m., he was "patrolling 'C' side of Housing Unit 250," after having finished

17   "patrolling 'A' and 'B' sides" and finding "no suspicious activity." Umphenour Decl. at ¶ 5. In

18   the same approximate window of time, Defendant Szalai claims to have been in the staff office

19   preparing for the 4:45 p.m. institutional count. Declaration of L. Szalai, Doc. 138-4 at 26-27,

20   ("Szalai Decl.") at ¶ 5. At approximately 4:30, Defendant Alvarez exited the staff bathroom in

21   Housing Unit 250. Declaration of J. Alvarez, Doc. 138-4 at 31-33, ("Alvarez Decl.") at ¶ 5. All

22   of the defendants claim that they were unaware of the assault on Plaintiff until Sergeant Wicks

23   instructed Officer Umphenour to summon Plaintiff to the officer's podium using the public

24   address system. Umphenour Decl. at ¶¶ 8, 13, 14; Szalai Decl. at ¶¶ 6, 7, 11; Alvarez Decl. at ¶¶

25   7, 13.

26

---

27   [7] Plaintiff also contends that he has, with assistance from a prison counselor, conducted a search of his record for
28   any counseling chrono for tobacco use between June and July of 2004 with negative results. Branch Decl. at ¶¶ 17-
     19.

Plaintiff's description of his assault is markedly different; he contends that he returned to Housing Unit 250 at 4:10 p.m. and returned to his assigned bed on "A Side." Branch Decl. at ¶12. He then claims to have been surrounded, stabbed, beaten and bludgeoned on the Day Room Floor by [four to six other inmates all] in full view of the [D]efendants." *Id*. Specifically, Plaintiff alleges that he "saw [D]efendants observing [him] being [attacked] until a look-out … yelled, 'the Sergeant is coming.'" *Id*. at ¶ 13. At that point, Plaintiff alleges that the Defendants left the podium area and his attackers returned to their respective bed areas. *Id.*

*2. Discussion*

Defendants move for summary judgment on both issues, treating their version of the facts as undisputed. At least one material fact is in dispute as to Plaintiff's Eighth Amendment claim, precluding summary judgment: whether Defendants saw Plaintiff being attacked. *Compare* Branch Decl. at ¶12, 13; *with* Umphenour Decl. at ¶¶ 8, 13, 14; Szalai Decl. at ¶¶ 6, 7, 11; Alvarez Decl. at ¶¶ 7, 13.

If Defendants were actually aware of the attack and purposefully did nothing to prevent or stop it, then Defendants failed in their duty to take "reasonable steps to protect inmates from physical abuse." Williams v. Young, 2015 WL 4617985, *16 (E.D. Cal. July 31, 2015) (quoting *Hoptowit v. Ray*, 682 F.2d 1237, 1250 (9th Cir. 1982)). However, if the situation was as described by the Defendants – each was unaware of the risk and not present at the time of the attack – then they cannot be held liable for failing to intercede. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994); *Cunningham v. Gates*, 229 F.3d 1271, 1289-90 (9th Cir. 2000).

Similarly, in addition to the fact relevant for the Eighth Amendment claim, at least one material fact is in dispute as to Plaintiff's retaliation claim, precluding summary judgment: 1) whether Defendant Umphenour was aware of and had threatened Plaintiff over Plaintiff's declaration regarding the inmate assault that he witnessed. *Compare* Umphenour Decl. at ¶¶ 15-17 (Defendant Umphenour was unaware of the inmate grievance only interacted with Plaintiff to counsel him against smoking.) *With* Branch Decl. at ¶¶ 5, 17-20 (Defendant Umphenour threatened that Plaintiff would be "dealt with" for submitting a false declaration against the officer that Plaintiff allegedly witnessed attacking an inmate.)

10

1    Defendants note that "apart from the counselling (sic) incident, [Plaintiff] does not offer

2  any … evidence linking Officer Umphenour to the" assault. Doc. 145 at 6. If Defendant

3  Umphenour did threaten Plaintiff regarding Plaintiff's testimony against another prison guard –

4  regardless of whether Defendant Umphenour did allow or facilitate the attack on Plaintiff to

5  follow through with that threat – then Plaintiff needs no additional evidence for a jury to be able

6  to determine that Defendant Umphenour acted in retaliation. *Watison v. Carter*, 668 F.3d 1108,

7  1114-15 (9th Cir. 2012) ("The mere threat of harm can be an adverse action….") (citation

8  omitted); *see Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005) ("Within the prison

9  context, a viable claim of First Amendment retaliation entails five basic elements: (1) An

10  assertion that a state actor took some adverse action against an inmate (2) because of (3) that

11  prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First

12  Amendment rights, and (5) the action did not reasonably advance a legitimate correctional

13  goal."). If, however, the jury determines that Defendant Umphenour never threatened Plaintiff, it

14  is unlikely that they could find that Defendant Umphenour acted in retaliation because Plaintiff

15  has submitted no other evidence to support a finding that Defendant Umphenour knew about

16  Plaintiff's declaration. *Watison*, 668 F.3d at 1114 (requiring a plaintiff to show a causal

17  connection between any adverse action and protected conduct).

18    Defendants' bid for qualified immunity is equally unavailing. Defendants again frame

19  that argument in reliance on disputed facts. For instance, Defendants present a laundry list

20  disputed factual situations – which are clearly not constitutional violations – then conclude that,

21  based on those disputed facts, they are entitled to qualified immunity:

22

23    A reasonable officer in defendants' position would have also believed that it was
     lawful to proceed with patrolling one side of the housing unit after having found
     no suspicious activity in the other sides of the unit. Further, a reasonable officer
24    would have believed that it was lawful for him to be in the Staff Office preparing
     for the next institutional count while his fellow correctional officers were
25    patrolling the housing unit. Moreover, a reasonable officer would believe it was
     lawful for him to use the restroom when his fellow correctional officer was
26    diligently patrolling the housing unit.

27

28

11

Doc. 145 at 9. Certainly, a reasonable officer would believe that patrolling the halls after clearing an area would be constitutional. However, it is not undisputed that Defendant Umphenour was, in fact, patrolling the halls after having cleared a different area. Similarly, it is not undisputed that Defendant Szalai was in the staff office, or that Defendant Alvarez was in the restroom at the time of Plaintiff's attack. Accordingly, Defendants have not proven entitlement to qualified immunity.

Based on the foregoing, Defendants have not made the requisite showing for a grant of summary judgment. Accordingly, IT IS HEREBY ORDERED that Defendants' Motion for Summary Judgment is DENIED.

IT IS SO ORDERED.

Dated:   September 4, 2015

SENIOR  DISTRICT  JUDGE