# UNITED STATES DISTRICT COURT

### EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS BRANCH,<br><br>         Plaintiff,<br><br>     v.<br><br>D. UMPHENOUR, L. SZALAI, and J.<br>ALVAREZ,<br><br>         Defendants. | Case No.  1:08-cv-01655-SAB (PC)<br><br>PRETRIAL ORDER<br><br>***Motion <u>in</u> <u>Limine</u> Deadlines***:<br>   Filing:     December 27, 2016<br>   Response: January 9, 2017<br>   Hearing:   January 17, 2017, at 2:00 p.m.<br>   in Courtroom 9<br><br>***Trial Date***:<br>   January 30, 2017, at 8:30 a.m. in<br>   Courtroom 9 (SAB) (2-3 days) |

This Court conducted a telephonic pretrial conference on December 5, 2016.  Plaintiff Louis Branch appeared pro se, and Christina Gruenberg appeared on behalf of Defendants D. Umphenour, L. Szalai, and J. Alvarez.   This action is proceeding against Defendants Umphenour, Szalai, and Alvarez for failure to protect Plaintiff in violation of the Eighth Amendment and against Defendant Umphenour for retaliation in violation of the First Amendment.  Pursuant to Federal Rule of Civil Procedure 16(e) and Local Rule 283, the Court issues this final pretrial order.

/ / /

## I.      JURISDICTION AND VENUE

This Court has jurisdiction and venue is proper.  This Court has original jurisdiction under 28 U.S.C. §§ 1331, 1334.  Venue is proper because a substantial part of the events or omissions on which the claim is based occurred in this District.

On July 14, 2016, Plaintiff filed a motion to disqualify the undersigned.  (ECF No. 216.)  On July 21, 2016, an order issued denying Plaintiff's request for disqualification finding that Plaintiff provided no basis for disqualification other than his disagreement with rulings made by the assigned magistrate judge which does not demonstrate bias against him or favoritism toward Defendants.  (ECF No. 218.)

In his pretrial statement, Plaintiff disputes the Court's jurisdiction contending that he seeks disqualification of the undersigned for " 'judicial usurpation of power'; willful abuses of judicial discretion; and manifest injustice."  (ECF No. 259 at 1.)  Motions to disqualify or recuse a judge fall under two statutory provisions, 28 U.S.C. § 144 and 28 U.S.C. § 455.  Section 144 provides for recusal where a party files a timely and sufficient affidavit averring that the judge before whom the matter is pending has a personal bias or prejudice either against the party or in favor of an adverse party, and setting forth the facts and reasons for such belief.  See 28 U.S.C. § 144.  Similarly, section 455 requires a judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned," 28 U.S.C. § 455(a), or in other specified circumstances, 28 U.S.C. §455(b).

A judge finding a section 144 motion timely and the affidavits legally sufficient must proceed no further and another judge must be assigned to hear the matter.  28 U.S.C. § 144; United States v. Sibla, 624 F.2d 864, 867 (9th Cir. 1980).  Where the affidavit is not legally sufficient, however, the judge at whom the motion is directed may determine the matter.  Sibla, 624 F.2d at 868 (holding judge challenged under § 144 properly heard and denied motion where affidavit not legally sufficient).  An affidavit filed pursuant to § 144 "is not legally sufficient unless it specifically alleges facts that fairly support the contention that the judge exhibits bias or prejudice directed toward a party that stems from an extrajudicial source."  Id. at 868 (citation omitted).

1   Under section 455 a motion to recuse must be decided by, the very judge whose

2   impartiality is being questioned." Bernard v. Coyne, 31 F.3d 842, 843 (9th Cir. 1994). "Section

3   455 clearly contemplates that decisions with respect to disqualification should be made by the

4   judge sitting in the case, and not by another judge." Id. (quoting United States v. Balistrieri, 779

5   F.2d 1191, 1202 (7th Cir. 1985).

6   Under both recusal statutes, the determination for disqualification is "whether a

7   reasonable person with knowledge of all the facts would conclude that the judge's impartiality

8   might reasonably be questioned." Pesnell v. Arsenault, 543 F.3d at 1043 (quoting United States

9   v. Hernandez, 109 F.3d 1450, 14534 (9th Cir. 1997).  For instance, a judge "shall" disqualify

10  himself "[w]here he has a personal bias or prejudice concerning a party. . . ."  28 U.S.C. §

11  455(b)(1).  However, the bias must arise from an extrajudicial source and cannot be based solely

12  on information gained in the course of the proceedings.  United States v. Hernandez, 109 F.3d at

13  1453 (citing Liteky v. United States, 510 U.S. 540, 554-556 (1994).  "Judicial rulings alone

14  almost never constitute a valid basis for a bias or partiality motion."  In re Focus Media, Inc., 378

15  F.3d 916, 930 (9th Cir. 2004) (quoting Liteky, 510 U.S. at 555).

16  In this instance, Plaintiff has not provided an affidavit and does not allege that recusal is

17  required due to bias.  Plaintiff seeks recusal based upon his conclusory allegations of " 'judicial

18  usurpation of power'; willful abuses of judicial discretion; and manifest injustice."  The Court

19  has considered the reasons set forth in section 455 which would require recusal and finds no

20  basis upon which recusal would be required in this matter.  The Court thereby denies Plaintiff's

21  motion for recusal.

22  **II.     TRIAL**

23  Trial will begin on **January 30, 2017, at 8:30 a.m.** before United States Magistrate

24  Judge Stanley A. Boone in Courtroom 9 (SAB).  The trial will be trial by jury.  The parties

25  estimate the trial will take 2 to 3 days.  Trial will consist of a jury of eight jurors with each side

26  having three peremptory strikes.

27  / / /

28  / / /

3

III.     **FACTS AND EVIDENTIARY ISSUES**

A.     **Undisputed Facts**

The following facts are undisputed:

1.     Plaintiff is a convicted felon, serving a life sentence.

2.     Plaintiff was housed at Avenal State Prison ("ASP") from May to August 2004.

3.     Defendants Umphenour, Szalai, and Alverez, were all employed at ASP in 2004.[1]

4.     On July 11, 2004, Defendants Umphenour, Szalai and Alvarez were working third watch (2:30 p.m. to 10:30 p.m.) in Housing Unit 250 in Facility II at ASP.

5.     At approximately 4:25 p.m., Sergeant Wicks was informed that Plaintiff was attempting to purchase a weapon from another inmate on the Facility II Yard.

6.     Upon Sergeant Wick's request, Defendant Umphenour paged Plaintiff over the public address system and asked him to report to the podium.

7.     Plaintiff approached the podium with blood running down the side of his face.

8.     During a search of the area, Sergeant Wicks found an inmate manufactured weapon in a trash can located on the "A" side of Housing Unit 250.  Sergeant Wicks did not believe that this weapon was the weapon utilized on Plaintiff because the inmate manufactured weapon was flat metal stock, whereas the wounds sustained by Plaintiff appeared to have come from a round object.

9.     Plaintiff was hospitalized and eventually placed in the Administrative Segregation Unit.

10.     Sergeant R. Wicks discovered an inmate manufactured weapon capable of inflicting a mortal wound in a trash can adjacent to the dormitory Plaintiff was housed in.

**Plaintiff contends that the following facts are undisputed:[2]**

1.     In May 2003, ASP officials and J. Mejia, California Department of Corrections and Rehabilitation ("CDCR") Headquarters Classification Services Representative, machinated

---

[1] Defendants' undisputed fact states the year as 2011, however based upon the timing of the event at issue, the Court assumes that this is a typographical error.

[2] The parties' undisputed facts which the other party has indicated are in dispute are set forth separately.

Plaintiff's placement in Soledad Prison with Plaintiff's documented enemy gang member.

2.     Plaintiff, accurately predicted to Soledad Psychologist, B. Gammard how, when and where Soledad Officials would wantonly expose Plaintiff to a substantial risk of serious harm from his documented enemy gang member.

3.     As Plaintiff predicted, prison officials orchestrated a confrontation between Plaintiff and his enemy gang member in the Central Infirmary.

4.     Plaintiff eschewed a physical altercation.

5.     Plaintiff's habeas corpus petition to the Monterey Superior Court resulted in an order which compelled Plaintiff's November 2003 placement in Folsom Prison.

6.     Folsom Captain O. Acuna granted Plaintiff's request for a placement recommendation to Vacaville or San Quentin.

7.     However, Folsom Counselor J. Elison forged Acuna's signature and confederated with the same J. Mejia from CDCR Headquarters to inappropriately deny Plaintiff's placement in Vacaville or San Quentin.

8.     Plaintiff and his mother filed citizen complaints against Elison's fraudulent machinations with J. Mejia.

9.     Elison arranged for Plaintiff's May 2004 placement at ASP in a clear violation of the Director's placement protocols.

10     In fear for his safety and life at ASP, Plaintiff declined to exit his cell to board the transportation bus to ASP.

11     However, Folsom officials forcibly removed Plaintiff from his cell and transported him to ASP.

12.     ASP's Facility 2 Initial Classification Hearing agreed that Plaintiff's placement at ASP was inappropriate and referred Plaintiff's cause to the Warden's Classification Representative for remedial action for the violation of the Director's protocols.

13.     In June 2004, at ASP, Plaintiff submitted a sworn Declaration to Warden S. Powers attesting to have witnessed Officer Dunn assault and batter prisoner Hawkins without legitimate cause.

14.     Several days later, Plaintiff and Defendant Umpbenour had a confrontation.

15.     Defendant Umpbenour's answer did not raise an affirmative defense regarding the undisputed confrontation.

16.     Defendant Umpbenour alleged he issued a chronological report (chrono) against plaintiff for possession and use of tobacco as the reason for the undisputed confrontation.

17.     Plaintiff alleged Defendant Umpbenour threatened that Plaintiff would be, "Dealt with!!" for submitting a "false" declaration to Warden S. Powers.

18.     Defendant Umpbenour's alleged chrono has not been produced/disclosed and two comprehensive searches of Plaintiff's case records by Solano Prison Counselor B. Davis has failed to discover Defendant Umpbenour's chrono.

19.     Immediately after the undisputed confrontation Plaintiff was rehoused six times in three weeks from Housing Units (HU) and from Facility 2 to Facility 4 and back to Facility 2.

20.     Facility captains arranged the transfers and were fully cognizant of Plaintiff's "case factors".

21.     On July 10, 2004, Plaintiff was rehoused from the Facility 2 Gymnasium to HU 250 where Defendants were assigned to supervise.

22.     On July 11, 2004, at 1545 hours, Plaintiff admonished the Facility 2 Lieutenant and Sergeant of experiencing escalating tension from HU 250 inmates and requested to be rehoused to the gym.

23.     The Facility 2 Lieutenant granted Plaintiff's request and notified HU 250 officer, Defendant Umphenour that Plaintiff would be rehoused to the Facility 2 gym after the 1645 institutional count.

24.     On July 11, 2004, at 1615-1620 hours, on the HU 250 main dayroom floor and during the supervision of Defendants Alvarez, Szalai, and Omphenour, Plaintiff was repeatedly stabbed, beaten and bludgeoned about the head by HU 250 inmates in an attempted murder.

25.     During the attempted murder: electronic alarms were not activated; whistles were not blown; radios did not transmit an alarm; and no orders were given to the inmate assailants to desist.

26.     The inmate assailants were not apprehended, identified nor held accountable for their attempted murder of Plaintiff.

27.     Defendant Umphenour gathered, inventoried, and packed Plaintiff's personal property in boxes he sealed with tape.

28.     Plaintiff was inappropriately ordered placed in Mule Creek Prison.

29.     Mule Creek officials documented that when they unsealed the personal property Defendant Umphenour had packed and sealed, they discovered Plaintiff's property had been "sabotaged".

30.     Mule Creek Counselor B.·Heise obtained the 07/11/2004 incident report log ASP FA2 04 07 0160 of the attempted murder from ASP.

31.     In January 2005 Mule Creek officials machinated an approval for Plaintiff's return placement to ASP.

32.     Office of Internal Affairs Special Agent Laura Woods arrived at Mule Creek and opened a formal investigation of the 07/11/2004 attempted murder of Plaintiff at ASP.

33.     Special Agent Woods caused the approved return placement of Plaintiff at ASP to be rescinded.

34.     On 07/07/2008, Plaintiff filed the 42 USC § 1983 complaint alleging the Avenal Warden, Chief of Inmate Appeals, Chief of Classification Services, Correctional Officers Alvarez, Szalai and Umphenour were partisans to a policy &.custom of retaliation that violated Plaintiff's First, Eighth and Fourteenth Amendments of the Federal Constitution.

35.     The Court established June 21, 2014 as the cut-off date for the parties to conduct discovery.

36.     However, in August 2014, counsel for Defendants submitted a sworn affidavit attesting to have "discovered" two 07/11/2004 chronos containing the affirmative defense of Alvarez and Szalai.

37.     Defendants' dilatory affirmative defense chronos claimed that during the attempted murder of Plaintiff: Defendant Umphenour (sworn summary judgment affidavit) was patrolling the opposite side of HU 250; Defendant Alvarez was exiting the staff restroom; and

1   Defendant Szalai was in the office preparing the institutional count.

2       38.   Defendants' affirmative defenses were not raised in their answers (Docs. 107 &

3   116).

4       39.   Additionally,   Defendants'   affirmative   defense   claims   were   not

5   contemporaneously documented in accordance with CDCR mandated policy in the Dept.

6   Operations Manual, Chapter 5, Adult Custody and Security Operations, Article 3. Incident

7   Report §§51030.1-51030.6.1.

8       40.   Further, Defendants Alvarez and Szalai did not sign their dilatory affirmative

9   defense chronos.

10      41.   Moreover, Defendants Alvarez and Szalai fail and refuse to identify the alleged

11  prison official whose signature is affixed to their dilatory affirmative defense chronos.

12      42.   Defendants Alvarez, Szalai, and Umphenour did not disclose the information

13  contained in their 07/11/2004 affirmative defense chronos before their counsel's alleged

14  "discovery" of that information in Plaintiff's case records.

15      43.   Most importantly, the information contained in Defendants' affirmative defense

16  claims are absolutely novel within the whole of CDCR operations, procedures and protocols and

17  have not been previously disclosed to nor corroborated by any CDCR official.

18      44.   Defendants' exhaustion of administrative remedies affirmative defense remedies

19  in their motion for summary judgment is based on fraud, perjury and subornation of perjury.

20      45.   At Soledad Prison it was discovered that Plaintiff had been exposed to a

21  substantial risk of serious harm by the surreptitious placement of his documented enemy gang

22  member in the prison's general population.

23      46.   Plaintiff's enemy was providentially apprehended, housed in segregation and

24  subsequently placed in another prison.

25      47.   Plaintiff has been repeatedly exposed to substantial risks of serious harm by

26  CDCR Classification Services.

27  / / /

28  / / /

8

**Defendant contends that the following facts are undisputed:**

1.      Around 4:30 p.m., Sergeant Wicks called Defendant Umphenour and informed him that he was looking for an inmate on Facility II who was attempting to buy a weapon from another inmate.  Defendant Umphenour returned to the officer's podium after receiving the call.

2.      Sergeant Wicks instructed Correctional Officer Landeros to handcuff, pat search, and escort Plaintiff to the Facility II Program Office because he suspected that Plaintiff may have been involved in a fight.

**B.      Disputed Facts**

The following facts are disputed:

**Plaintiff submits the following facts are disputed:**

1.      Premise -.tobacco contraband vs. reprisal threat - for undisputed confrontation between Defendant Umphenour and Plaintiff.

2.      Notice (PC §2079) to Warden re: Plaintiff's safety concerns.

3.      Failure to process staff complaint re: Officer Perez.

4.      Incident Report re: 2004 Avenal Facility 4 Sex Offender Murder.

5.      Cognizance by Defendants for the attempted murder of Plaintiff.

6.      Defendants machination of the attempted murder of Plaintiff.

7.      Assailants were Defendants' inmate gang member agents.

8.      Integrity of Defendants' alibi chronological reports.

9.      Lieutenant Marmelejo's land line call informing Defendant Umphenour of Plaintiff's transfer placement to the gymnasium housing unit upon clearance of the institutional count.

10.      Sergeant Wick's alleged "tight" observation.

11.      Pervasive knowledge among the inmate general population of the identity of Plaintiff's assailants.

12.      Defendant Umphenour's expropriation, distribution and "sabotage" of Plaintiff's personal property.

13.      Allegation that Plaintiff attempted to purchase an inmate manufactured weapon.

14.     Allegation that Plaintiff was attacked for attempting to purchase an inmate manufactured weapon.

15.     Sergeant Wick's land line call to Defendant Umphenour admonishing Defendant Umphenour that Wicks had information of weapon purchase.

16.     Inappropriate 2004 placement at ASP from Folsom Prison in violation of CDCR protocols.

17.     Identity of the alleged prison officials whose signature is affixed to Defendants Alvarez and Szalai's July 11, 2004 alibi chronological reports.

**Defendant submits the following facts are disputed:**

1.     Whether Defendant Umphenour was aware of any declaration that Plaintiff allegedly submitted in support of another inmate's grievance.

2.     Whether Defendant Umphenour called Plaintiff a "baby rapist" or a "snitch."[3]

3.     Whether Plaintiff was assaulted in full view of Defendants, and whether Defendants failed to intervene.

4.     Whether Defendants were aware of the assault on Plaintiff before Sergeant Wicks instructed Defendant Umphenour to summon Plaintiff to the officer's podium using the public address system.

5.     What injuries Plaintiff sustained from the incident, if any.

**C.     Disputed Evidentiary Issues**

The following evidentiary issues are disputed:

**Plaintiff submits the following disputed evidentiary issues:**

1.     Defendants' testimony to any alleged factual information and/or evidence not recorded in the officially mandated crime/incident report - motion in limine.

2.     Holographic display of the crime scene located in ASP Facility 2, Housing Unit 250's Main Dayroom Floor.

---

[3] During the pretrial conference, Plaintiff stipulated that he has never alleged that Defendant Umphenour made such statements.  Plaintiff expressed concern that he would suffer prejudice should Defendants attempt to admit such statements during the course of the trial.  To the extent that Plaintiff seeks to preclude such statements on the basis of undue prejudice, this would be properly raised in a motion in limine.

3.      Plaintiff's criminal history - motion in limine.

4.      Plaintiff's disciplinary history - motion in limine.

5.      Defendants' exhaustion of administrative remedies exhibits in support of their 138 motion for summary judgment is prima facie evidence of spoliation, fraud, perjury, and subornation of perjury.

**Defendant submits the following disputed evidentiary issues:**

Currently, Defendants do not know precisely which evidence Plaintiff intends to rely on at trial because he has not yet filed his Pretrial Statement.[4]  Defendants thus reserve the right to object to Plaintiff's evidence following receipt of his exhibit list and/or at trial.

**IV.      SPECIAL FACTUAL INFORMATION**

Plaintiff submits the following as special factual information:

Date, place and general nature of the incident

See Undisputed Facts - 4:21-28; 5:1-7.

See Disputed Factual Issues - 7:1-28; 7A:1--3.

Particular acts, omissions or conditions - basis for liability

See Above

Statute, Ordinance or Regulation Violated

See Undisputed Facts - Pages 2 through 6A.

See Disputed Evidentiary Issues – "a." & "e."

Government Code

§ 19572 (d) Inexcusable Neglect of Duty, (f) Dishonesty,

(t) Failure of Good Behavior

Penal Code

§115 Offering False or Forged Instruments for Filing

§118 False Affidavits as to Affiant's Testimony

---

[4] During the pretrial conference, Plaintiff expressed concern regarding a statement in Defendants' pretrial statement that Defendants had not received his pretrial statement.  Defendants asserted that they have now received Plaintiff's pretrial statement.  The Court notes that the pretrial statement was docketed on the ECF system on November 29, 2016 as having been received on November 28, 2016.

1    §118 Perjury

2    §127 Subornation of Perjury

3    §132 Offering False Evidence

4    §134 Preparing False Evidence

5    §139 Retaliatory Threats ·

6    §140 Use of Retaliatory Force

7    §146 Seizure of Property

8    §147 Willful Inhumanity and Oppression of Prisoner

9  Department Operations Manual

10    §51030.4.1 Incident/Crime Report

11  Federal Rules of Civil Procedure

12    8(c) Claims of Privilege

13    26(b)(5) Discovery Responses

14    26(g) Discovery Responses

15    33(b)(4) Interrogatory Answers and Responses

16    37(a)(3) Evasive Answer or Responses

17    37(c)(1) False or Misleading Disclosure

18    37(c)(2) Refusal to Admit

19    56( e) Use of Affidavits

20    56(g) "Bad Faith" Affidavits

21  Federal Rules of Evidence

22    802 Hearsay Rule

23    803(6)(7)(8) Hearsay Without Exception

24    901(a) Authentication

25    902(11) Self-Authentication

26  Plaintiff's Age: 70 years

27  Injuries sustained: Stabbed, Beaten, Bludgeoned, Emotional, Mental and Physical Pain

28  Prior conditioned worsened: Depression and Emotional Pain

1   Future Medical: Mental Health Treatment and Consultation

2   Property Damage: $600 plus

3   General Damages: Compensatory

4   Punitive Damages: Yes

5   **V.    RELIEF SOUGHT**

6       Plaintiff is seeking damages for discovery misconduct sanctions; compensation for

7   litigation costs and labor; damages for physical, emotional and mental pain and anguish;

8   damages for "reprehensible" conduct of recklessness, malice and deceit; and property damage.

9       Defendants contend that Plaintiff is not an attorney, and is therefore not entitled to

10  attorney's fees.  As Plaintiff is not entitled to attorney's fees under 42 U.S.C. §1988, and

11  Defendants as government employees are not entitled to fees either, attorney's fees are not at

12  issue here.

13  **VI.    POINTS OF LAW**[5]

14  **A.    Liability Under the 42 U.S.C. § 1983**

15      "Section 1983 creates a private right of action against individuals who, acting under color

16  of state law, violate federal constitutional or statutory rights."  Tatum v. Moody, 768 F.3d 806,

17  814 (9th Cir. 2014), cert. denied, 135 S. Ct. 2312 (2015).  "Section 1983 is not itself a source of

18  substantive rights, but merely provides a method for vindicating federal rights elsewhere

19  conferred."  Tatum, 768 F.3d at 814 (citations omitted).

20      Under section 1983, a plaintiff must prove that (1) each defendant acted under color of

21  state law and (2) each defendant deprived him of rights secured by the Constitution or federal

22  law.  Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006).  A person "subjects"

23  another to the deprivation of a constitutional right within the meaning of the statute if he does an

24  affirmative act, participates in another's affirmative acts, or fails to perform an act which he is

25  legally required to do, that causes the claimed deprivation.  Leer v. Murphy, 844 F.2d 628, 633

26  (9th Cir. 1988).  There is no respondeat superior liability under section 1983, and therefore, each

27  _____

28  [5] Plaintiff objects to Defendants' points of law.  As this is an action is which the Plaintiff is proceeding pro se the
    Court provides the points of law.

1    defendant is only liable for his or her own misconduct.  Ashcroft v. Iqbal, 556 U.S. 662, 677

2    (2009).  Plaintiff must demonstrate that each defendant personally participated in the deprivation

3    of his rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

4            **B.      Failure to Protect in Violation of the Eighth Amendment**

5            The treatment a prisoner receives in prison and the conditions under which the prisoner is

6    confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual

7    punishment.  Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006) (citing Farmer v.

8    Brennan, 511 U.S. 825, 847 (1994) and Rhodes v. Chapman, 452 U.S. 337, 347 (1981))

9    (quotation marks omitted).   The Eighth Amendment requires prison officials "[to] take

10   reasonable measures to guarantee the safety of the inmates."  Farmer, 511 U.S. at 832 (internal

11   quotation marks omitted).  This includes the duty to protect inmates from violence at the hands

12   of other prisoners.  Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1067 (9th Cir. 2016).

13           However, not every injury suffered by an inmate at the hands of another results in a

14   prison official's liability for violation of the Eighth Amendment.  Clem v. Lomeli, 566 F.3d

15   1177, 1181 (9th Cir. 2009).  "The failure of prison officials to protect inmates from attacks by

16   other inmates may rise to the level of an Eighth Amendment violation when: (1) the deprivation

17   alleged is 'objectively, sufficiently serious' and (2) the prison officials had a 'sufficiently

18   culpable state of mind,' acting with deliberate indifference."  Hearns v. Terhune, 413 F.3d 1036,

19   1040 (9th Cir. 2005).  "Deliberate indifference occurs when 'the official acted or failed to act

20   despite his knowledge of a substantial risk of serious harm.' "  Solis v. Cty. of Los Angeles, 514

21   F.3d 946, 957 (9th Cir. 2008) (quoting Farmer, 511 U.S. at 841).  "Deliberate indifference entails

22   something more than mere negligence," but it is "also clear that it is satisfied by something less

23   than acts or omissions for the very purpose of causing harm or with knowledge that harm will

24   result."  Farmer, 511 U.S. at 835.

25           **C.      Retaliation in Violation of the First Amendment**

26           A viable claim of First Amendment retaliation in the prison context requires evidence

27   that the prison official took some adverse action against an inmate because of that prisoner's

28   protected conduct, that such action would chill a person of ordinary firmness from future First

1    Amendment activities, and that the action did not reasonably advance a legitimate correctional

2    goal.  Rhodes v. Robinson, 408 F.3d 559, 567-69 (9th Cir. 2004); Watison v. Carter, 668 F.3d

3    1108, 1114 (9th Cir. 2012).  "A retaliation claim may assert an injury no more tangible than a

4    chilling effect on First Amendment rights."  Brodheim v. Cry, 584 F.3d 1262, 1269-70 (9th Cir.

5    2009) (citations omitted).

6         In order to prevail on his retaliation claim, a plaintiff must prove that his protected

7    conduct was "the 'substantial' or 'motivating' factor behind the defendant's conduct.  Brodheim,

8    584 F.3d at 1271 (quoting Soranno's Gasco, Inc. v. Morgan, 874 F.2d 1310, 1314 (9th Cir.

9    1989)); see also Hartman v. Moore, 547 U.S. 250, 259 (2006) (the plaintiff must show a causal

10   connection between the defendant's retaliatory animus and the subsequent injury in any

11   retaliation action).  The plaintiff also bears the burden of proving the absence of legitimate

12   correctional goals for the conduct of which he complains.  Pratt v. Rowland, 65 F.3d 802, 806

13   (9th Cir. 1995).

14        **D.    Punitive Damages**

15        In order to recover punitive damages, the plaintiff has the burden of proving what, if any,

16   punitive damages should be awarded by a preponderance of the evidence.  NINTH CIRCUIT

17   MODEL CIVIL JURY INSTRUCTIONS § 5.5 (2008).  The jury must find that the defendants' conduct

18   was "motivated by evil motive or intent, or . . . involves reckless or callous indifference to the

19   federally protected rights of others."  Smith v. Wade, 461 U.S. 30, 56 (1986).

20        **VII.   STIPULATIONS**

21        Defendants do not anticipate any stipulations at this time but will attempt to meet and

22   confer with Plaintiff regarding potential stipulations.

23        **VIII.  AMENDMENTS/DISMISSALS**

24        Plaintiff seeks to file a fourth amended complaint.  On October 5, 2016, an order issued

25   denying Plaintiff's request to file an amended pleading.  To the extent that Plaintiff is seeking

26   reconsideration of that order, under Rule 60(b) of the Federal Rules of Civil Procedure, a district

27   court may grant relief from its previous orders in the following circumstances: "(1) mistake,

28   inadvertence, surprise, or excusable neglect; . . . or [¶] (6) any other reason that justifies relief."

"A motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law."   Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir.2009) (internal quotations marks and citations omitted).   Moreover, "[a] party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation. . ." of that which was already considered by the Court in rendering its decision.   U.S. v. Westlands Water Dist., 134 F.Supp.2d 1111, 1131 (E.D.Cal.2001) (internal quotation marks and citation omitted).

Further, requests for reconsideration are also governed by Local Rule 230(j) which states:

> Whenever any motion has been granted or denied in whole or in part, and a subsequent motion for reconsideration is made upon the same or any alleged different set of facts, counsel shall present to the Judge or Magistrate Judge to whom such subsequent motion is made an affidavit or brief, as appropriate, setting forth the material facts and circumstances surrounding each motion for which reconsideration is sought, including:
> (1) when and to what Judge or Magistrate Judge the prior motion was made;
> (2) what ruling, decision, or order was made thereon;
> (3) what new or different facts or circumstances are claimed to exist which did not exist or were not shown upon such prior motion, or what other grounds exist for the motion; and
> (4) why the facts or circumstances were not shown at the time of the prior motion.

Plaintiff has set forth no grounds for the court to reconsider the order denying his motion to file an amended complaint.   Accordingly, Plaintiff's motion to file an amended complaint is denied.

No amendments are requested by Defendants.

**IX.    SETTLEMENT NEGOTIATIONS**

There have been no settlement negotiations. Plaintiff has failed to make a settlement demand, and the mandatory settlement conference was vacated after Plaintiff stated that he refused to attend the mandatory settlement conference in person.

Plaintiff objects to this statement on the ground that the settlement judge vacated the settlement conference because it refused to conduct the conference in accordance with the Civil Rights of Institutionalized Persons Act; and also Defendants did not make a settlement offer.

///

1    ## X.    AGREED STATEMENT

2    Presentation of all or part of this action upon an agreed statement of facts is unlikely,

3    given the factual disputes between the parties.

4    ## XI.    SEPARATE TRIAL OF ISSUES

5    Defendants request to bifurcate the issue of punitive damages, in order to avoid the

6    unnecessary and/or premature admission of evidence regarding Defendants' net worth.

7    Additionally, there is only one incident at issue, so no other separate trial of issues is

8    recommended.

9    As is this Court's standard practice, the Court will bifurcate the issue of punitive

10   damages.  If the jury finds that any defendant is liable for punitive damages, the Court will

11   conduct a second phase of trial on the amount of punitive damages.

12   ## XII.    IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

13   Plaintiff requests appointment of experts.  The district court has the discretion to appoint

14   an expert pursuant to Rule 706(a) of the Federal Rules of Evidence, which reads, in part, "[t]he

15   court may on its own motion or on the motion of any party enter an order to show cause why

16   expert witnesses should not be appointed. . . ."  Fed. R. Evid. 706(a); <u>Walker v. American Home</u>

17   <u>Shield Long Term Disability Plan</u>, 180 F.3d 1065, 1071 (9th Cir. 1999).  Rule 706 also confers

18   on the court the discretion to apportion costs in the manner directed by the court, including the

19   apportionment of costs to one side.  Fed. R. Evid. 706; <u>Ford ex rel. Ford v. Long Beach Unified</u>

20   <u>School Dist.</u>, 291 F.3d 1086, 1090 (9th Cir. 2002); <u>Walker</u>, 180 F.3d at 1071.

21   Expert testimony is governed by Rule 702 of the Federal Rules of Evidence which

22   provides that an expert witness may testify if "the expert's scientific, technical, or other

23   specialized knowledge will help the trier of fact to understand the evidence or to determine a fact

24   in issue."  Fed. R. Evid. 702(a).  In this action, the trier of fact is being asked to determine if the

25   Defendants failed to protect Plaintiff from other inmates and if Defendant Umphenour retaliated

26   against Plaintiff.  As evidenced from the pretrial statements of the parties, the factual issues to be

27   decided in this action will largely require credibility findings based on the testimony of the

28   individual witnesses.  Given the claims that are proceeding to trial in this action, the Court does

1   not find, and Plaintiff has not identified, any evidence or fact in issue for which an expert

2   opinion would assist the jury in determining.  Accordingly, Plaintiff's request for appointment of

3   an expert witness is denied.

4        Defendants do not believe limitation of witnesses is needed.

5   **XIII.   PRE TRIAL FILING DEADLINES**

6        **A.        Motions <u>In</u> <u>Limine</u> and Hearing:**

7        Any party may file a motion <u>in</u> <u>limine</u>, which is a procedural mechanism to limit in

8   advance testimony or evidence in a particular area.  <u>United States v. Heller</u>, 551 F.3d 1108, 1111

9   (9th Cir. 2009).  In the case of a jury trial, the Court's ruling gives Plaintiff and Defendants'

10  counsel advance notice of the scope of certain evidence so that admissibility is settled before

11  attempted use of the evidence before the jury.  <u>Id.</u> at 1111-1112.  Although the Federal Rules do

12  not explicitly provide for the filing of motions in limine, the Court has the inherent power to hear

13  and decide such motions as a function of its duty to expeditiously manage trials by eliminating

14  evidence that is clearly inadmissible for any purpose.  <u>Luce v. United States</u>, 469 U.S. 38, 41 n.4

15  (1984).

16       This Court further orders the parties to file motions <u>in</u> <u>limine</u> only with respect to

17  important, critical issues.  Motions <u>in</u> <u>limine</u> on abstract evidentiary issues or issues more

18  appropriately addressed by the Court on a case-by-case basis (such as a motion <u>in</u> <u>limine</u> to

19  exclude all irrelevant evidence) will be looked upon with disfavor.  After satisfying the

20  foregoing, if a motion in limine still seeks to address the admissibility of a particular trial exhibit,

21  the exhibit in question must be referenced by the trial exhibit number so that the court can review

22  the actual exhibit for admissibility.  If the exhibit sought to be admitted would not be in the

23  court's possession one week prior to the motion in limine hearing, then the exhibit in question

24  must be included in the motion.  Failure to properly reference or attach an exhibit in the motion

25  will result in the request being denied.

26       The parties shall not file separate motions <u>in</u> <u>limine</u> for every issue presented to the

27  Court.  Rather, each party may file one consolidated motion <u>in</u> <u>limine</u> which is subdivided into

28  separate sections for each issue setting for the legal authority and analysis.  The responding party

1  shall file one opposition in response addressing each motion in limine issue in a separate section.

2  As set forth in the Trial Scheduling Order (ECF No. 215), the deadline for service and

3  filing of motions in limine is **December 27, 2016**. The deadline for service and filing of an

4  opposition, if any, is **January 9, 2017**. A telephonic motions in limine hearing will be held on

5  **January 17, 2017, at 2:00 p.m.** in Courtroom 9, before the undersigned.  Counsel for

6  Defendants is directed to arrange for telephone contact with Plaintiff and to contact the

7  Courtroom Deputy, Mamie Hernandez, at (559) 499-5672, prior to the hearing date, to receive

8  instructions regarding the conference call.  The parties are directed to the Court previous order

9  regarding the format and scope of the motion in limine and such motion and opposition shall

10  conform to those requirements.

11      **B.      Trial Witnesses:**

12  No later than **January 13, 2017**, each party shall file and serve a final witness list,

13  including the name of each witness and omitting witnesses listed in the joint pretrial statement

14  which the parties no longer intend to call.  **Only witnesses who are listed in this pretrial order**

15  **may appear on the final witness list**.  **The parties may not call any witness that is not on the**

16  **final witness list unless (1) it is solely for impeachment or rebuttal purposes, (2) the parties'**

17  **stipulate, (3) additional witnesses are required in light of the Court's ruling on a motion in**

18  **limine, or (4) it is necessary to prevent "manifest injustice."**  Fed. R. Civ. P. 16(e); Local

19  Rule 281(b)(10).

20  During trial, the parties' are obligated to provide the opposing party, by the close of the

21  prior business day, the names of the witnesses the party intends to call on the next trial day.  If

22  evidentiary problems are anticipated, the parties' shall immediately notify the Court that a

23  hearing will be required.

24  The following is a list of witnesses that the parties expect to call at trial:

25      1.      Plaintiff Anticipates Calling the Following Witnesses:[6]

---

26  [6] The Court does not require Plaintiff to subpoena the defendants to call them as witnesses during his case in chief. Defendants are required to appear during the trial to potentially be called as witnesses in this action.

27

28  During the December 5, 2016 pretrial conference, Plaintiff raised the issue of his inability to call witnesses because he was unable to pay witness fees to bring his witnesses to the trial.  The Court notes that Plaintiff was

a.      Plaintiff Louis Branch

b.      Inmate Hawkins, P 93276[7]

c.      Inmate Torbor, K 48746

d.      Correctional Lieutenant Marmolejo

e.      Correctional Sergeant Wicks

f.      Correctional Sergeant Ecklin

g.      Warden Powers

h.      Internal Affairs Special Agent Woods

i.      Correctional Officer Dunn

j.      Correctional Captain Fuentes

k.      Correctional Captain Jones

l.      Inmate Appeals Chief Grannis

m.      Attorney Carbone

n.      Inspector General Barton

o.      Thompson - Expert

p.      Piller - Expert

q.      Hickman - Expert.

---

provided with deadlines to file motions for the attendance of incarcerated and non-incarcerated witnesses in the trial scheduling order issued June 2, 2016.  Plaintiff was required to file a motion for the attendance of incarcerated witnesses on or before October 10, 2016.  (ECF No. 215 at 6-7.)  The order informed Plaintiff that he needed to file a motion identifying the incarcerated witness and the motion must be accompanied by a declaration showing that the requested witness has actual knowledge of facts relevant in this action.  Plaintiff did not file a motion identifying witnesses or including the required showing of knowledge of relevant information.

Further, Plaintiff was provided with the procedure to procure unincarcerated witnesses who refuse to testify voluntarily.  A motion was required to be filed by December 5, 2015.  Plaintiff did not file a timely motion to obtain the attendance of unincarcerated witnesses.  Plaintiff asserted at the pretrial hearing that rather than filing a motion to obtain witnesses he filed a request for appointment of counsel.  To the extent that Plaintiff's current request is construed as a motion for waiver of the requirement that Plaintiff pay witness fees, the in forma pauperis statute, 28 U.S.C. § 1915, does not waive payment of fees or expenses for witnesses.  Dixon v. Ylst, 990 F.2d 478, 480 (9th Cir. 1993) (citing Tedder v. Odel, 890 F.2d 210, 211–12 (9th Cir.1989)).  Plaintiff is not entitled to waiver of the witness fees or expenses in this action.  Further, Plaintiff has not submitted a motion for attendance of unincarcerated witnesses, nor has he demonstrated that any of his requested witnesses have knowledge relevant in this action.  Plaintiff's request to waive the witness fee requirement is denied.

[7] Plaintiff did not submit a motion for the attendance of incarcerated witnesses requesting the attendance of incarcerated witnesses at the trial of this matter.

1  r.  Hagar – Expert (Special Master)

2  s.  Hurdle –Expert (Ombudsman)

3  2.  <u>Defendants Anticipate Calling the Following Witnesses</u>:

4  a.  Defendant D. Umphenour
      Represented by counsel
5

6  b.  Defendant L. Szalai
      Represented by counsel

7  c.  Defendant J. Alvarez
      Represented by counsel
8

9  d.  Sergeant R. Wicks
      Avenal State Prison
10     #1 Kings Way
      Avenal, CA 93204
11     (559) 386-0587

12  e.  Lieutenant M. Marmolejo
      Avenal State Prison
13     #1 Kings Way
      Avenal, CA 93204
14     (559) 386-0587

15  f.  Correctional Officer R. Landeros
      Avenal State Prison
16     #1 Kings Way
      Avenal, CA 93204
17     (559) 386-0587

18  g.  MTA R. Giebrecht
      Avenal State Prison
19     #1 Kings Way
      Avenal, CA 93204
20     (559) 386-0587

21  h.  Custodian of Records
      Avenal Valley State Prison
22     #1 Kings Way
      Avenal, CA 93204
23     (559) 386-0587

**The parties are forewarned that <u>every</u> witness they intend to call must appear on their own witness list.  The mere fact that a witness appears on the opposing party's witness list is not a guarantee that the witness will be called at trial or otherwise be available for questioning by other parties.  Each party must undertake independent efforts to secure the attendance of <u>every</u> witness they intend to call at trial.**

C.      **Exhibits**

As noted below, no later than **December 12, 2016**, the parties shall exchange their final exhibit list and pre-marked exhibits.

1.      Pre-Marked Exhibits:

All exhibits must be pre-marked with an exhibit sticker or other legible numbering/lettering by the party who seeks to use it.  If the individual exhibit includes multiple pages and is not easily identified as to each page (i.e., Bates stamp numbering), then the exhibit must be page numbered.  This requirement that exhibits be pre-marked applies both to evidence that will be formally admitted into evidence as well as any other exhibits that will be presented in any manner during trial, such as "demonstrative" evidence.  Each individual "original" exhibit that will be submitted to the jury must be stapled/fastened so that the exhibit does not become separated.  Further, exhibits submitted to the jury must be pre-marked on the front page only in the manner described above.  Impeachment or rebuttal evidence need not be pre-marked.

a.      **Joint Exhibits**: Joint exhibits are those exhibits which all parties agree may be admitted into evidence without the need for laying a proper foundation under the Federal Rules of Evidence.   Joint exhibits must be pre-marked with the designation "J-[Number]" (e.g., J-1, J-2).  Those exhibits may be introduced at any time during the course of the trial.  However, unless the parties agree otherwise on the record, joint exhibits are not "automatically" admitted into evidence: at least one of the parties must admit a joint exhibit into evidence.  If an exhibit is not admitted by any party, the exhibit will not be given to the jury despite its "joint" designation as an exhibit.

b.      **Plaintiff's Exhibits**:  Plaintiff's exhibits must be pre-marked using **numbers** beginning with 1 (e.g., 1, 2, etc).  The Plaintiff must pre-mark his exhibits before they are provided to the Defendants.

c.      **Defendants' Exhibits**:  Defendants' exhibits must be pre-marked using **letters** beginning with A (e.g., A, B, C...AA, BB, CC...AAA, BBB, CCC, etc.).

/ / /

22

1      2.      Exchange and Filing of Exhibits List and Exhibits

2          No later than **December 12, 2016,** the parties shall exchange their proposed exhibits.

3    Because Plaintiff is incarcerated, he shall submit his exhibits to the Litigation Coordinator at the

4    Institution where he is incarcerated, on or before the above-referenced deadline.   The exhibits

5    exchanged shall be pre-marked by each party and correctly exhibited in the format described in

6    Part XIII.C.1, above.

7          Defendants are required to submit trial exhibits for both parties in binders.   As noted

8    above, Defendants shall submit **three (3) complete, legible and identical sets of exhibits in**

9    **binders** on or about **January 9, 2017**.   Within the binders, the pre-marked exhibits must be

10   separately tabbed and assembled in sequential order.   The three complete binders shall be

11   delivered to Courtroom Clerk Mamie Hernandez for use (1) by the Court, (2) at the witness stand

12   for the witnesses, and 3) for the plaintiff at trial.[8]

13      3.      Exhibits

14         The following is a list of documents or other exhibits that the parties expect to offer at

15   trial.   As set forth above, exhibits must be pre-marked.   See discussion, supra, Part XIII.C.1.   No

16   exhibit, other than those listed in this section, may be admitted unless the parties stipulate or

17   upon a showing that this order should be modified to prevent "manifest injustice." Fed. R. Civ.

18   P. 16(e); Local Rule 281(b)(11).

19      a.      **Plaintiff's Exhibits**

20      1.      11/26/2003 Inspector General Memo

21      2.      l/15/2003 Complaint #00160

22      3.      4/19/2003 Vendetta Memo-ASP Warden

23      4.      4/24/2003 Vendetta Memo-FBI

24      5.      4/15/2003 CSR Action

25      6.      7/14/2003 Chrono

26      7.      8/12/2003 Court Order

27   _____

28   [8] The Court notes this is a change from the June 2, 2016 trial scheduling order which only required two sets of exhibits.

| | | |
|---|---|---|
| 1 | 8. | 11/14/2003 CSR Action |
| 2 | 9. | 3/15/2004 R. Branch Complaint |
| 3 | 10. | 3/24/2004 Complaint Receipt |
| 4 | 11. | 4/18/2004 Complaint Disposition |
| 5 | 12. | 4/12/2004 Mission Change Memo - Conversion |
| 6 | 13. | 4/15/2004 C. Carbone, Esq. Memo |
| 7 | 14. | 4/16/2004 CSR Action |
| 8 | 15. | 4/21/2004 Notice of Lost Appeal |
| 9 | 16. | 5/19/2004 ASP Initial Classification Chrono |
| 10 | 17. | 5/27/2004 Response re: C. Carbone |
| 11 | 18. | 5/26/2004 Allegation Response |
| 12 | 19. | 6/16/2004 Warden Declaration |
| 13 | 20. | 6/20/2004 Warden Declaration |
| 14 | 21. | 6/22/2004 Transfer Chrono |
| 15 | 22. | 7/02/2004 Transfer Chrono |
| 16 | 23. | 7/11/2004 Incident Report |
| 17 | 24. | 51030.4.1 DOM Incident Report |
| 18 | 25. | 8/04/2004 Complaint #02265 |
| 19 | 26. | 8/6/2004 CSR Action |
| 20 | 27. | 8/18/2004 Property Appeal #02125 |
| 21 | 28. | 10/13/2004 Hardship Dr. Letter |
| 22 | 29. | 1/21/2005 CSR Action |
| 23 | 30. | 2/7/2005 OIA Investigation |
| 24 | 31. | 2/8/2005 CSR Action |
| 25 | 32. | 7/19/07 Emergency Appeal #03042 |
| 26 | 33. | 11/16/07 Safety Memo |
| 27 | 34. | 11/27/07 Safety Concerns Memo |
| 28 | 35. | 8/1/08 News Article - Policy & Custom |

1    36.    8/8/08 News Article Code of Silence

2    37.    9/29/10 Surreptitious Enemy Placement

3    38.    10/2/15 Chrono Search

4    39.    12/17/2015 News Article

5    **b.    Defendant's Exhibits**

6    1.    Photographs of "A" side of Housing Unit 250 in Facility II at Avenal State Prison

7    2.    Diagram of Housing Unit 250 in Facility II at Avenal State Prison

8    3.    Photographs of Plaintiff from July 11, 2004

9    4.    Plaintiff's CDC 7219 Medical Report from July 11, 2004

10    5.    Photographs of inmate manufactured weapon found on July 11, 2004

11    6.    Plaintiff's Inmate Appeal's Tracking System printouts

12    7.    Plaintiff's Appeal No. ASP-M-04-02265 (and responses)

13    8.    Plaintiff's Appeal No. ASP-M-04-01272 (and responses)

14    If the parties intend to use copies of exhibits or evidence at trial, those copies must be

15    legible.  The Court may, on its own motion, exclude illegible copies from evidence.

16    4.    Responses to Discovery Requests

17    The parties may admit responses to discovery requests[9] into evidence.  The parties shall

18    file and serve a list of all responses to discovery requests intended to be used at trial no later than

19    **December 12, 2016**.  The list shall identify the responses to discovery requests by title and set

20    number.

21    If a party seeks to admit a physical copy of the discovery responses into evidence at trial,

22    the discovery responses must be pre-marked as an exhibit in the same manner discussed above.

23    See discussion, supra, Part XIII.C.1.  Alternatively, if the party intends to read relevant portions

24    of the discovery responses into evidence, a copy of the discovery responses must be lodged with

25    the Court no later than **January 23, 2017**.  The Court will address objections to discovery

26    responses as they arise during trial.

27    _____

28    [9] Responses to discovery requests include responses to depositions by written questions (Fed. R. Civ. P. 31), interrogatories (Fed. R. Civ. P. 33) and requests for admissions (Fed. R. Civ. P. 36).

1    Even though discovery is closed, all parties are reminded of their continuing obligation to

2    update their prior discovery responses if they obtain new information or is otherwise made aware

3    that a prior discovery response is incomplete or incorrect.  Fed. R. Civ. P. 26(e)(1).

4    **If a party attempts to admit or use for any purpose evidence that (1) was not**

5    **previously disclosed during discovery and (2) should have been disclosed as an initial**

6    **disclosure under Rule 26(a) or as a supplemental disclosure under Rule 26(e), the Court**

7    **will prohibit that party from admitting or using for any purpose that evidence at trial,**

8    **unless the failure was substantially justified or was harmless.  See Fed. R. Civ. P. 37(c)(1).**

9        5.    Deposition Testimony

10   Deposition testimony shall be designated by page and line number, with such designation

11   to be **filed and served no later than December 27, 2016.**  Any counter-designation as to the

12   same designation (also set out by page and line number) shall be **filed and served no later than**

13   **January 17, 2017.**  The original certified transcript of any deposition identified in a designated

14   or counter-designation shall be lodged with the clerk,s office **no later than December 27, 2016,**

15   if not previously lodged with the Court.

16   If any party intends to admit relevant portions of deposition testimony into evidence, the

17   relevant deposition testimony must be pre-marked as an exhibit in the same manner discussed

18   above.  See discussion, supra, Part XIII.C.1.  However, any party may request that deposition

19   testimony offered for any purpose other than impeachment be presented in nontranscript form, if

20   available.  See Fed. R. Civ. P. 32(c).

21   The Court will address objections to deposition testimony as they arise during trial.

22       6.    Duty of the Parties' Counsel

23   The Court respects the jury's time and expects issues that must be presented outside the

24   jury's presence to be raised such that the jury's service is not unnecessarily protracted.  To the

25   extent possible, the parties shall raise issues that must be presented to the Court outside of the

26   jury's presence (1) in the morning before the jury sits, (2) during breaks, (3) in the afternoon

27   after the jury is excused or (4) during any other appropriate time that does not inconvenience the

28   jury.  For example, if evidentiary problems can be anticipated, the parties should raise the issue

with the Court before the jury sits so that there is no delay associated with specially excusing the jury. Issues raised for the first time while the jury is sitting when the issue could have been raised earlier will be looked upon with disfavor and counsel may be sanctioned for any fees, costs or other expenses caused by their failure to raise the issue at a more convenient time.

7. <u>Post-Trial Exhibit Retention</u>

Pursuant to Local Rule 138(f), the Court will order that custody of all exhibits be returned to the defendants' counsel after completion of the trial. The defendants' counsel shall retrieve the original exhibits from the courtroom deputy following the verdict in the case. The defendants' counsel shall retain possession of and keep safe all exhibits until final judgment and all appeals are exhausted or the time for filing an appeal has passed.

**D.     Trial Briefs**

Trial briefs are not required in this case. [10] However, if the parties chose the file a trial brief, it shall be filed and served no later than **January 23, 2017**. The form and content of the trial brief must comply with Local Rule 285. Special attention should be given in the trial brief to address reasonably anticipated disputes concerning the substantive law, jury instructions and/or admissibility of evidence. Local Rule 285(a)(3). The parties need not include in the trial brief any issue that is adequately addressed in a motion <u>in limine</u> or in an opposition brief to a motion <u>in limine</u>.

**E.     Jury Instructions**

The parties shall filed proposed jury instructions as provided in Local Rule 163 on or before than **January 13, 2017.** The parties are only required to file proposed jury instructions relating to the substantive law underlying this action. All proposed jury instructions shall (1) indicate the party submitting the instruction (i.e., joint/agreed-on, Plaintiff's or Defendant's), (2) be numbered sequentially, (3) include a brief title for the instruction describing the subject matter, (4) include the text of the instruction, and (5) cite the legal authority supporting the instruction. If the proposed jury instruction is based on the Ninth Circuit Model Jury Instructions,

---

[10] The deadline set for trial briefs set in this order shall supersede the deadline set in Local Rule 285(a).

CACI, BAJI or other source of jury instructions, the proposed jury instruction shall also include a citation to that specific instruction. All proposed jury instructions shall be e-mailed in Word® format to saborders@caed.uscourts.gov no later than **January 13, 2017.** Jury Instructions will not be given or used unless they are so e-mailed to the Court.

The Court will not accept a mere list of numbers associated with form instructions from the Ninth Circuit Model Jury Instructions, CACI, BAJI or other source of jury instructions. The proposed jury instructions must be in the form and sequence which the parties desire to be given to the jury. Any blank fields in the form instructions must be filled-in before they are submitted to the Court. Irrelevant or unnecessary portions of form instructions must be omitted.

Ninth Circuit Model Jury Instructions shall be used where the subject of the instruction is covered by a model instruction. Otherwise CACI or BAJI instructions shall be used where the subject of the instruction is covered by CACI or BAJI. All instructions shall be short, concise, understandable, and consist of neutral and accurate statements of the law. Argumentative or formula instructions will not be considered.

If any party proposes a jury instruction that departs from the language used in the Ninth Circuit Model Jury Instructions, CACI, BAJI or other source of jury instructions, that party shall, by italics or underlining, highlight the differences in language and must cite the legal authority supporting the modification.

No later than **January 23, 2017**, the parties shall file and serve written objections to any disputed jury instructions proposed by another party. All objections shall be in writing and (1) shall set forth the proposed instruction objected to in its entirety, (2) shall specifically set forth the objectionable matter in the proposed instruction, and (3) shall include a citation to legal authority to explain the grounds for the objection and why the instruction is improper. A concise argument concerning the instruction may be included. Where applicable, the objecting party shall submit an alternative proposed instruction covering the subject or issue of law.

**F.     Proposed Verdict Form**

The Court will prepare the verdict form, which the parties will have the opportunity to review on the morning of trial.  If the parties wish to submit a proposed verdict form, they must

1   do so on or before **January 13, 2017**.  Defense counsel's proposed verdict form shall also be e-

2   mailed as a Word® attachment to saborders@caed.uscourts.gov no later than **January 13, 2017.**

3        **G.       Proposed Jury <u>Voir</u> <u>Dire</u>**

4        Proposed <u>voir</u> <u>dire</u> questions, if any, shall be filed on or before **January 23, 2017**,

5   pursuant to Local Rule 162.1(a).  The parties each are limited to fifteen (15) minutes of jury <u>voir</u>

6   <u>dire</u>, unless this Court determines more time is warranted.

7        **H.       Statement of the Case**

8        The parties may serve and file a non-argumentative, brief statement of the case which is

9   suitable for reading to the jury at the outset of jury selection on or before **January 23, 2017**.  The

10   Court will consider the parties' statements but will draft its own statement. The parties will be

11   provided with the opportunity to review the Court's prepared statement on the morning of trial.

12        **XIV.   ASSESSMENT OF JURY COSTS FOR FAILURE TO TIMELY NOTIFY**

13   **COURT OF SETTLEMENT**

14        The parties must immediately notify the Court of any agreement reached by the parties

15   which resolves this litigation in whole or in part.  Local Rule 160(a).  The parties must advise the

16   Court of settlement <u>immediately</u>, but must do so no later than 4:30 p.m. (Pacific Time) on

17   **January 27, 2017.**  If, for any reason attributable to counsel or parties, including settlement, the

18   Court is unable to commence a jury trial as scheduled when a panel of prospective jurors has

19   reported for <u>voir</u> <u>dire</u>, the Court may assess against counsel or parties responsible all or part of

20   the cost of the panel.  Local Rule 272(b).  Jury costs will include attendance fees, per diem,

21   mileage, and parking.  If the parties request a continuance after the jury has been called, the

22   Court may assess jury costs as a condition for the continuance.

23        **XV.    COMPLIANCE WITH THIS ORDER**

24        Strict compliance with this order and its requirements is mandatory.  This Court will

25   strictly enforce the requirements of this pretrial order, especially those pertaining to jury

26   instructions and verdict forms.  Failure to comply with all provisions of this order may be

27   grounds for the imposition of sanctions, including possible dismissal of this action or entry of

28   default, on any all counsel as well as on any party who causes non-compliance with this order.

1    This order shall be modified "only to prevent manifest injustice."  Fed. R. Civ. P. 16(e).

2         Moreover, this order supersedes the parties' pretrial statement and controls the conduct of

3    further proceedings irrespective of any purported rights the parties claim to reserve in their

4    pretrial statement.

5    **XVI.   USE OF ELECTRONIC EQUIPMENT IN COURTROOM**

6         Any party wishing to receive an overview or tutorial of the Court's electronic equipment

7    must contact the Courtroom Deputy Clerk Mamie Hernandez at (559) 499-5672 or

8    mhernandez@caed.uscourts.gov at least two (2) weeks before the start of trial in order to

9    schedule a tutorial session at a time convenient to the Court's Information Technology staff.  The

10   parties need to coordinate so everyone who is interested can attend the IT conference, the Court

11   will hold only one conference per case.  The parties shall confer and advise the Courtroom

12   Deputy Clerk Mamie Hernandez of the date and time that has been agreed upon.  The parties will

13   not be provided any training on the day of or during the course of the trial.

14        The electronic equipment and resources available for this trial may differ from the

15   equipment and resources available in other courtrooms and may even differ from the equipment

16   and resources available in this courtroom at another time.  It is the responsibility of the parties to

17   familiarize themselves with the equipment and resources available for use in this trial prior to the

18   commencement of trial.  If any party is unfamiliar with the equipment and resources available for

19   use in this trial, that party may be ordered to proceed without the aid of such equipment and

20   resources and/or may be sanctioned for any fees, costs or expenses associated with any delay.

21        Depending upon Court available equipment at the time of trial, the Plaintiff may be

22   provided with an electronic overheard projector at his trial table for purposes of showing

23   exhibited and admitted exhibits at trial.  Accordingly, Plaintiff need not request that he allowed

24   to use electronic equipment as Plaintiff may be provided with electronic equipment if available.

25   / / /

26   / / /

27   / / /

28   / / /

**XVII.  OBJECTIONS TO PRETRIAL ORDER**

Any party may file and serve written objections to any of the provisions of this order on or before **December 20, 2016**. Such objections shall specify the requested modifications, corrections, additions or deletions.

IT IS SO ORDERED.

Dated:  **December 7, 2016**

UNITED STATES MAGISTRATE JUDGE

31