# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS BRANCH,<br><br>Plaintiff<br><br>v.<br><br>D. UMPHENOUR, et al.,<br><br>Defendants | CASE NO. 1:08-CV-1655 SAB (PC)<br><br>**ORDER ON PLAINTIFF'S MOTION TO WITHDRAW REFERENCE AND ORDER REGARDING PRIOR SCREENING ORDERS**<br><br>(Doc. Nos. 198, 199, 347) |

This case stems from a confrontation involving pro se prisoner Plaintiff Louis Branch ("Branch") and several correctional officers at Avenal State Prison ("ASP"). A Magistrate Judge presided over a jury trial, which resulted in a defense verdict on all claims that had been permitted to proceed. On appeal, the Ninth Circuit remanded the matter back to this Court with instructions to: (1) rule on Branch's motion to withdraw consent/reference, and (2) review the screening orders on Branch's complaints that had been entered prior to all parties having consented (a violation of *Williams v. King*, 875 F.3d 500 (9th Cir. 2017)). This order addresses both matters as instructed.

## **PROCEDURAL BACKGROUND**

On July 7, 2008, Branch filed his original complaint. See Doc. No. 1. The Complaint named as Defendants N. Grannis (Chief of Inmate Appeals), K. Mendoza-Powers (warden of ASP), A. Mancinas (Classification and Parole Representative at ASP), D. Umphenour (correctional officer at ASP), and two Doe defendants (identified as correctional officers at ASP). See id. The Complaint alleged that: (1) in violation of the Eighth Amendment, Umphenour and the Does failed to protect and help Branch as he was being attacked and seriously injured by four

1 to six inmate gang members; (2) in violation of the First Amendment, Mancinas and Mendoza-Powers retaliated against him for participating in a formal investigation by the California Inspector General by ignoring his appeals and letters regarding his safety and permitting five intra-facility transfer; Umphenour retaliated against him by vandalizing, destroying, and distributing his property to the assailants; and (3) in violation of the First Amendment, Grannis failed to act on his appeals/grievances and correct violations by the other defendants. See id. The Complaint also alleged violations of Fourteenth Amendment Due Process Clause.

The complaint was screened on April 7, 2009, by Magistrate Judge William Wunderlich. See Doc. No. 10. Judge Wunderlich found that Branch had alleged a viable Eighth Amendment claim against Umphenour, and viable Eighth Amendment claims for failing to protect against Grannis, Mancinas, and Mendoza-Powers. See id. Judge Wunderlich held that Branch had not sufficiently alleged any retaliation claims and that Branch had no viable Fourteenth Amendment claims because the subject of his claims were governed by the Eighth Amendment. See id. Branch was instructed to either file an amended complaint or a notice of intent to pursue the claims that were found to be viable. See id.

On September 29, 2008, Branch consented to Magistrate Judge jurisdiction. See Doc. No. 5.

On May 11, 2009, Judge Wunderlich dismissed the case for failure to state a claim following Branch's apparent failure to file a timely amended complaint. See Doc. No. 11.

Also on May 11 but after the dismissal order was docketed, Branch's amended complaint was filed. See Doc. No. 13. The First Amended Complaint ("FAC") elaborated on the sparse allegations of the original complaint and contained three causes of action: (1) violation of the Eighth Amendment by Grannis, Powers, and Mancinas for ignoring his letters and appeals regarding his safety, and against Umphenour and the Does for watching him get beaten by other prisoners; (2) a First Amendment retaliation claim against Grannis, Powers, and Mancinas for their connection to transfers due to Branch's participation in the Inspector General's investigation, and against Umphenour due to Branch's participation in/support of another prisoner's grievance; and (3) a Fourteenth Amendment claim. See id.

On February 26, 2010, Magistrate Judge Austin granted Branch's motion to vacate the dismissal and reopened the case. See Doc. No. 16.

On April 15, 2010, the case was reassigned from Magistrate Judge Wunderlich to Magistrate Judge Oberto. See Doc. No. 20.

On June 28, 2010, the FAC was screened by Magistrate Judge Oberto. See Doc. No. 21. The screening order noted that the manner of screening a complaint had changed since the original complaint had been filed, and that the principles announced in *Aschcroft v. Iqbal*, 129 S.Ct. 1937 (2009) now governed. See id. With respect to retaliation, Magistrate Judge Oberto found that no viable retaliation claims against Grannis, Mancinas, and Mendoza-Powers had been pled. See id. Specifically, there were insufficient factual allegations that Grannis denied an administrative appeal because Branch had engaged in protected activity, and there were insufficient factual allegations that Mendoza-Powers ignored Branch's letters that requested a prison transfer because Branch had engaged in protected activity. See id. As to Mancinas, the allegations of adverse action were unduly vague, the factual allegations did not sufficiently demonstrate that Mancinas spread rumors that Branch was a "snitch and a baby raper," and there were insufficient factual allegations that Mancinas performed any acts because Branch engaged in protected conduct. See id. However, viable retaliation claims against Umphenour and the Does were pled. See id. Magistrate Judge Oberto noted that Umphenour allegedly told Branch that Branch would be "dealt with" for helping in another inmate's grievance. See id. Magistrate Judge Oberto found adverse actions by Umphenour and the Does when they failed to intervene while Branch was attacked by other inmates. See id. Magistrate Judge Oberto found another adverse act by Umphenour when he allegedly sabotaged Branch's property during a transfer to Mule Creek prison from ASP. See id. With respect to the Eighth Amendment failure to protect claims, Magistrate Judge Oberto found that Branch stated plausible claims against Umphenour and the Does, but did not state plausible claims against Mendoza-Powers, Grannis, and Mancinas in light of the new standards announced in *Iqbal*. See id. Specifically, the allegations did not show that Grannis could have done anything prior to Branch being assaulted by other inmates, and the factual allegations were insufficient to show that Mendoza-Powers and Mancinas were on notice of a specific threat to

3

Branch's safety. See id. Finally, the Fourteenth Amendment claims were not plausible because the more specific protections of the Eighth Amendment applied. See id. Branch was instructed to either file an amended complaint or a notice of intent to pursue the claims that were found to be viable. See id.

After several extensions of time were granted, Branch filed his Second Amended Complaint ("SAC") on August 25, 2010. See Doc. No. 26. The SAC contained the same three causes of action as the first amended complaint. See id.

On March 23, 2011, this case was reassigned from Magistrate Judge Oberto to Magistrate Judge Snyder. See Doc. No. 28.

On May 11, 2011, Magistrate Judge Snyder screened the SAC. See Doc. No. 29. With respect to retaliation, Magistrate Judge Snyder found that the allegations against Grannis, Mendoza-Powers, and Mancinas were conclusory and speculative and did not plausibly indicate that these defendants acted because Branch had engaged in protected conduct. See id. As to Umphenour, Magistrate Judge Snyder found a plausible retaliation claim based on Umphenour telling Branch that Branch would be "dealt with" for participating in another inmate's grievance and then failing to intervene to stop the assault against Branch by other inmates. See id. Magistrate Judge Snyder found no viable claim against Umphenour regarding Branch's "sabotaged" property. See id. Magistrate Judge Snyder noted that the issues with Branch's property were discovered at Mule Creek, Branch did not sufficiently link Umphenour to any retaliatory act, and the allegation that his property was "sabotaged" was vague. See id. With respect to the Does, no plausible retaliation claim was found because there was nothing to indicate that the Does were aware that Branch had engaged in protected activity, and thus, the allegations did not plausibly show that the Does acted out of a retaliatory animus. See id. With respect to the Eighth Amendment, Magistrate Judge Snyder held that the alleged facts did not sufficiently show that Grannis, Mancinas, and Mendoza-Powers were aware of a substantial risk of harm to Branch. See id. However, Magistrate Judge Snyder did find that Branch stated plausible Eighth Amendment claims against Umphenour and the Does because they did nothing to stop an assault against Branch by other inmates. See id. With respect to the third claim, Magistrate Judge Snyder

held that because the First and Eighth Amendments contained specific protections that covered Branch's claims, no plausible Fourteenth Amendment claim was stated.  See id.  With respect to official capacity claims, Magistrate Judge Snyder noted that the Eleventh Amendment barred all claims for monetary relief.  See id.  Magistrate Judge Snyder also held that the only viable claims against the individuals involved a failure to intervene in an attack against Branch and that the allegations surrounding the failure to intervene were insufficient to show *Monell* liability, i.e. harm caused by a custom, policy, or practice.  See id.  Finally, Magistrate Judge Snyder dismissed the claim for injunctive relief since that claim was tied to defendants against whom no plausible claims were pled and denied declaratory relief since a jury verdict would establish whether constitutional rights had been violated.  See id.  Magistrate Judge Snyder declined to give further leave to amend since prior deficiencies had not been cured, and ordered that the case proceed against Umphenour and the Does.  See id.

The same day, May 11, 2011, Magistrate Judge Snyder ordered service of the SAC on Umphenour.  See Doc. No. 30.

On August 12, 2011, Umphenour declined magistrate judge jurisdiction.  See Doc. No. 41.

On September 7, 2011, this case was reassigned from Magistrate Judge Snyder to Magistrate Judge Austin.  See Doc. No. 47.

On July 10, 2013, Plaintiff filed a third amended complaint ("TAC").  See Doc. No. 94. The TAC substituted Defendants Alvarez and Szalai for the Doe defendants, and alleged the same First, Eighth and Fourteenth Amendment claims against the same defendants as the SAC.  See id.

On September 16, 2013, Magistrate Judge Austin screened the TAC.  See Doc. No. 103. Magistrate Judge Austin found that although Branch continued to maintain claims against Mendoza-Powers, Mancinas, and Grannis, these individuals were dismissed from the case with prejudice by Magistrate Judge Snyder and thus, were no longer parties.  See id.  Magistrate Judge Austin held that the Eleventh Amendment barred Branch's official capacity claims against Umphenour, Alvarez, and Szalai.  See id.  Magistrate Judge Austin dismissed the claim for declaratory relief because a jury verdict in Branch's favor would sufficiently establish that a constitutional violation occurred.  See id.   A First Amendment retaliation claim against

5

Umphenour for failing to intervene, and Eighth Amendment failure to protect/intervene claims against Umphenour, Alvarez, and Szalai were found to be cognizable. See id. Magistrate Judge Austin held that there were no cognizable retaliation claims against Alvarez and Szalai because the allegations did not indicate that either defendant was aware that Branch engaged in protected activity and the allegation that they acted with retaliatory animus was conclusory. See id. Magistrate Judge Austin did not find that there was a viable retaliation claim against Umphenour based on "sabotaged" property. See id. Magistrate Judge Austin explained that Branch failed to link Umphenour with a retaliatory act, no alleged facts show that Umphenour took adverse acts against Branch's property, and the allegation that property was "sabotaged" was vague. See id. Finally, Magistrate Judge Austin held that no plausible Fourteenth Amendment claim was pled because the First and Eighth Amendments provided specific protections that covered Branch's claims. See id. Magistrate Judge Austin ordered service of the TAC on Alvarez and Szalai and permitted the case to proceed against those defendants and Umphenour. See id

On August 17, 2015, the case was reassigned from Magistrate Judge Austin to Magistrate Judge Boone. See Doc. No. 176.

On November 3, 2015, Alvarez, Szalai, and Umphenour consented to magistrate judge jurisdiction. See Doc. No. 184.

On November 25, 2015, the case was reassigned to Magistrate Judge Boone for all purposes due to consents by the parties. See Doc. No. 186.

On March 30, 2016, Branch filed a motion to vacate his consent to magistrate judge jurisdiction. See Doc. Nos. 198, 199.

On April 1, 2016, Magistrate Judge Boone denied Branch's motion to vacate consent. See Doc. No. 200.

On January 31, 2017, a jury found that Umphenour, Alvarez, and Szalai did not violate Branch's First or Eighth Amendment rights. See Doc. Nos. 311, 312.

On September 5, 2019, the Ninth Circuit upheld the jury verdicts in favor of Umphenour, Alvarez, and Szalai, but remanded for this Court to review the screening orders and rule on Branch's motion to withdraw consent. See Doc. No. 341.

**I.     PLAINTIFF'S MOTION TO WITHDRAW CONSENT**

*Plaintiff's Argument*

Branch argues that willful and chronic abuse of discretion by Magistrate Judges Austin, Boone, Snyder, and Wunderlich has enabled defendants to commit a fraud on the court, and that fraud constitutes the "good cause" or "extraordinary circumstances" needed to withdraw consent.

With respect to Judge Boone, Branch focuses on a December 21, 2015 order ("Order 190"). Order 190 denied a June 5, 2015 motion for reconsideration by Branch and denied two motions in limine filed by Branch. See Doc. No. 190. Branch contends that Order 190 represents clear and convincing evidence of an abuse of discretion that is sufficient to justify withdraw of consent. Branch contends that Order 190 is flawed because it: (1) addressed a reconsideration motion that was directed to a district judge, not a magistrate judge; (2) failed to discuss the undersigned's order on Defendants' motion for summary judgment; (3) failed to discuss the facts and merits of Branch's reply in support of reconsideration; (4) erroneously stated that Branch offered no arguments as to why Defendants' objections to two interrogatories should be overruled; (5) applied the standard for a Rule 59(e) motion just like defense counsel's opposition, even though Branch invoked Rule 60(a) and 60(b)(4); (6) failed to compel defendants to meet their burden of proof for invoking that attorney-client privilege and relied on inapposite authority cited by defense counsel; (7) failed to apply the voluntary waiver doctrine to defendant's invocation of the attorney client privilege; (8) denied the motions in limine prior to Branch having an opportunity to file a reply; and (9) parroted defense counsel's argument that the motions in limine were premature.

With respect to Judge Wunderlich, Branch argued that the closure of his case was a clearly erroneous act.

With respect to Judges Snyder and Austin, Branch argues that these judges failed to properly apply Rule 8 with respect to his attempted claims for a custom and policy of retaliation and his retaliation claim against Umphenour for sabotaging his property during the transfer to Mule Creek prison, failed to recognize that Branch was bringing a separate Fourteenth Amendment claim that was distinct from violations of the First and Eighth Amendments, and

improperly dismissed his supervisory liability claims against Mendoza-Powers.  Branch also argues that Judge Austin's findings and recommendation on defendants' motion for summary judgment was erroneous and not adopted by the undersigned.

Branch argues that the above shows chronic bad faith and abuses of discretion by the Magistrate Judges.

*Legal Standard*

If all parties to a civil action consent, all proceedings including trial and entry of judgment may be conducted by a magistrate judge.  28 U.S.C. § 636(c)(1); Branch v. Umphenour, 936 F.3d 994, 1000 (9th Cir. 2019); Dixon v. Ylst, 990 F.2d 478, 479-80 (9th Cir. 1993).  "There is no absolute right, in a civil case, to withdraw consent to trial and other proceedings before a magistrate judge."  Dixon, 990 F.2d at 480.  Under both the United States Code and the Federal Rules of Civil Procedure, once a civil case is referred to a magistrate judge under § 636(c), the reference can be withdrawn by the court only "for good cause on its own motion, or under extraordinary circumstances shown by any party."  28 U.S.C. § 636(c)(4); Fed. R. Civ. P. 73(b)(3); Branch, 936 F.3d at 1002; Dixon, 990 F.2d at 480.  "Good cause" and "extraordinary circumstances" are high bars that are difficult to satisfy.  Branch, 936 F.3d at 1004.  "Neither mere dissatisfaction with a magistrate judge's decisions, nor unadorned accusations that such decisions reflect judicial bias, will suffice."  Id.  A motion to withdraw consent or reference is to be decided by the district judge, not the magistrate judge.  Id. at 1003.

*Discussion*

With respect to Judge Boone, Branch has pointed only to Order 190 and alleged that the errors and abuses of discretion contained in that single order justify withdrawal of consent.  The Court disagrees and finds that there is nothing about Order 190 that is so extraordinary or improper that a withdrawal of consent is appropriate.  Accepting the arguments of opposing counsel or relying on cases cited by opposing does not by itself show an improper bias, it merely shows that a court finds the argument persuasive and the cases controlling.  Further, the substance of Branch's arguments for reconsideration were fully considered, even if Magistrate Judge Boone ultimately agreed with the original denial of the motion to compel and concluded that Branch was

8

not entitled to relief. Also, simply because a reply or aspects of a reply were not mentioned in Order 190 does not mean that the reply was ignored. It is not uncommon for court orders to resolve a motion without expressly mentioning every document reviewed or addressing every point made in a filing. Additionally, it was harmless to resolve the motions in limine prior to receiving a reply. Order 190 was correct, the motions in limine were premature and contrary to the standard practices of the Eastern District of California. Motions in limine are designed to address evidentiary matters outside the presence of a jury. They are filed in accordance with a briefing schedule that is set in a pre-trial order, which in turn is issued after a pre-trial conference. No pre-trial conference had occurred when Branch filed his motions. Although Branch may have wished the Magistrate Judge to consider a Second Circuit case that may (or may not) have aided his arguments regarding the timing of his limine motions, this Court is not bound by the Second Circuit and Magistrate Judge Boone did nothing improper by following standard procedures. Finally, even if there are some errors in Order 190, there is always a risk that any judge, be it a magistrate judge, a district judge, or an appellate justice, will make an error. Judges are only human. No possible error discussed by Branch is so egregious, unreasonable, or improper as to justify withdrawing the reference from Magistrate Judge Boone. There is no doubt that Branch feels aggrieved and is very dissatisfied with Order 190, but that is all that can be said. Branch's dissatisfaction is insufficient to support withdrawing consent. See Branch, 936 F.3d at 1004.

With respect to the conduct of Magistrate Judges Wunderlich, Austin, and Snyder, the Court does not find that their conduct is relevant. At the time this case was referred to a magistrate judge, the magistrate judge assigned to the matter was Judge Boone. Once the referral was made and the case was reassigned, Judge Boone has been the only judge (either district or magistrate) that has conducted any judicial proceedings. Judges Wunderlich and Snyder (who are now fully retired) and Austin have had nothing to do with this case since the referral to Judge Boone in November 2015. Since this matter was referred to Judge Boone, the prior actions of Judges Wunderlich, Austin, and Snyder have no bearing on whether the referral of this case to Judge Boone should be withdrawn.

Even if the Court did consider the actions of the prior Magistrate Judges to be relevant and worthy of consideration, the Court still would not find that withdrawal of consent to be appropriate. Judge Wunderlich erroneously dismissed the case, but the error was timely corrected by Judge Austin. Judge Snyder and Judge Austin screened two complaints, and the analyses of the two screening orders were nearly identical. However, even if there were errors in the screening orders, that is still only two erroneous orders issued by two separate magistrate judges who no longer have anything to do with this case. There is no right to error free proceedings, and there are mechanisms in place such as reconsideration or appeal to correct judicial errors. No possible error alleged by Branch in the two screening orders is so egregious, unreasonable, or improper as to justify withdrawing consent.

In sum, because he has not cleared the high bar of showing either good cause or extraordinary circumstances, Branch's motion to withdraw consent will be denied. See Branch, 936 F.3d at 1004.

## II. SCREENING ORDERS

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. See Mollett v. Netflix, Inc., 795 F.3d 1062, 1065 (9th Cir. 2015). In reviewing a complaint under Rule 12(b)(6), all well-pleaded allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Kwan v. SanMedica, Int'l, 854 F.3d 1088, 1096 (9th Cir. 2017). Moreover, prisoner *pro se* complaints are construed liberally and are afforded the benefit of any doubt. Chavez v. Robinson, 817 F.3d 1162, 167 (9th Cir. 2016). However, complaints that offer no more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Johnson v. Federal Home Loan Mortg. Corp., 793 F.3d 1005, 1008 (9th Cir. 2015). Further, the Court is "not required to accept as true allegations that contradict exhibits attached to the Complaint or matters properly subject to

judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." Seven Arts Filmed Entm't, Ltd. v. Content Media Corp. PLC, 733 F.3d 1251, 1254 (9th Cir. 2013). To avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678; Mollett, 795 F.3d at 1065. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678; Somers v. Apple, Inc., 729 F.3d 953, 959 (9th Cir. 2013). "Plausibility" means "more than a sheer possibility," but less than a probability, and facts that are "merely consistent" with liability fall short of "plausibility." Iqbal, 556 U.S. at 678; Somers, 729 F.3d at 960. Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012). Leave to amend a complaint need not be granted if amendment would be futile or the plaintiff has failed to cure deficiencies despite repeated opportunities. Garmon v. County of L.A., 828 F.3d 837, 842 (9th Cir. 2016).

Prior to this case being referred to Judge Boone, four complaints were screened by four different magistrate judges. It appears that in each complaint, Branch was alleging the same causes of action. Branch was attempting to allege First Amendment retaliation, Eighth Amendment failure to protect/intervene, and Fourteenth Amendment claims all against Grannis, Mendoza-Powers, Mancinas, Umphenour, Doe 1/Alvarez, and Doe 2/Szalai. Branch also appeared to be attempting to allege *Monell* liability against the California Department of Corrections based on the defendants' following a policy of retaliation again him. The Court will examine each of the claims separately.

  1. Eighth Amendment – Failure To Protect & Intervene

The Eighth Amendment imposes a duty on prison officials to protect inmates from violence at the hands of other inmates. Farmer v. Brennan, 511 U.S. 825, 833 (1994); Cortez v. Skol, 776 F.3d 1046, 1050 (9th Cir. 2015). A prison official violates this duty when: (1) objectively viewed, the prison official's act or omission must cause "a substantial risk of serious

11

harm," and (2) the official must be subjectively aware of that substantial risk and act with "deliberate indifference to inmate health or safety." Farmer, 511 U.S. at 843, 839-40; Cortez, 776 F.3d at 1050. That is, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837; Cortez, 776 F.3d at 1050. A prison official's deliberate indifference may be established through an "inference from circumstantial evidence" or "from the very fact that the risk was obvious." Farmer, 511 U.S. at 842; Cortez, 776 F.3d at 1050. A prison official's failure to intervene to stop an assault against an inmate can violate the Eighth Amendment. See Robins v. Meecham, 60 F.3d 1436, 1442 (9th Cir. 1995).

### a. Defendants Umphenour, Alvarez, and Szalai

Each Magistrate Judge found that Branch's complaints stated Eighth Amendment failure to protect claims against Umphenour and the Doe defendants/Alvarez and Szalai. Indeed, these are the claims that were tried to a jury. Because these claims were resolved by a jury, the screening orders were harmless.

### b. Defendant Grannis

The first screening order by Judge Wunderlich found that Branch had sufficiently stated a claim. However, the screening orders by Judges Oberto and Snyder found that no plausible claim had been stated. After review, the Court agrees with the conclusion and analyses of Judges Oberto and Snyder.

Plaintiff alleged that Grannis denied an inmate appeal/grievance at the third level of review after Branch had been transferred from ASP to Mule Creek in August 2004. That is, Branch had already been attacked by ASP prisoners when the grievance reached Grannis, and Branch was no longer at ASP. No allegations indicated that Grannis was in a position to do anything regarding any fears Branch may have had or dangers he may have faced at ASP, and nothing indicates that Grannis was aware that Branch was facing a risk of harm when Grannis denied the appeal. Therefore, no plausible Eighth Amendment claim was ever stated against Grannis, and it was appropriate to dismiss that claim against Grannis with prejudice.

c. <u>Defendants Mendoza-Powers and Mancinas</u>

With respect to Mendoza-Powers and Mancinas, Judge Wunderlich found that Branch had sufficiently alleged an Eighth Amendment claim, but Judges Oberto and Snyder found that no plausible claims had been stated.

After review, the Court agrees with the conclusion and analyses of Judge Oberto and Judge Snyder. Branch alleged that after his transfer from Folsom Prison to ASP in May 2004, he informed Mendoza-Powers and Mancinas that he had safety concerns due to the retaliatory animus of Mancinas, and that he wanted a transfer in part because his transfer from Folsom to ASP was contrary to guidelines and thus, illegal. Branch also alleged that he told Mendoza-Powers that he was concerned for his safety because Mancinas had previously arranged for him to be housed at Soledad with a known enemy and that the emergency transfer from Folsom was inappropriate. However, Branch's allegations were devoid of any factual allegations that indicated he was at a substantial risk of harm while housed at ASP. Although Plaintiff was attacked by other inmates, the complaints contained no factual allegations that any named defendant was aware that Branch was at a substantial risk of harm from the inmates who attacked him (or from any other inmate). For example, there were no allegations that Branch had been threatened by any other inmate or that he informed any named defendant that he was at a risk of harm from other inmates. Branch alleged that he told the defendants that he was at a risk of harm because Defendant Mancinas had previously had him transferred from ASP, but such an allegation is insufficient for any defendant to be aware that Plaintiff would be attacked by other inmates while housed at ASP.[1] Therefore, no plausible Eighth Amendment claim was ever stated against Mendoza-Powers and Mancinas, and dismissal of those claims with prejudice was appropriate.

2. <u>First Amendment – Retaliation</u>

To state a claim for First Amendment retaliation, a prisoner must allege: (1) that he was engaged in protected conduct; (2) that the defendant took adverse action against the plaintiff; (3) a causal connection between the adverse action and the protected conduct; (4) that "the "official's acts would chill or silence a person of ordinary firmness from future First Amendment

---

[1] The Court notes that no factual allegations linked the inmates' attack on Branch to any conduct by Mancinas.

13

activities[;]" and (5) that the retaliatory acts did not advance the legitimate goals of the correctional institution. Watison v. Carter, 668 F.3d 1108, 1114-15 (9th Cir. 2012).

        a.      Doe Defendants/Defendants Alvarez and Szalai

Judge Oberto found that plausible claims against the Does/Alvarez and Szalai were pled, but Judges Snyder and Austin found that no plausible claims were stated. After review, the Court agrees with the conclusions and analyses Judges Snyder and Austin. Branch never alleged that the Does/Alvarez and Szalai were aware of any protected activity or that they failed to intervene to protect Branch from other inmates because Branch had engaged in constitutionally protected conduct. This deficiency was identified in Judge Snyder's screening order of the SAC, but the deficiency was not corrected or addressed in the TAC. Since no plausible allegations were made, and because the deficiency was not corrected when Branch filed the TAC, it was appropriate to dismiss the First Amendment claim against the Does/Alvarez and Szalai with prejudice.

        b.      Defendant Grannis

Judges Wunderlich, Oberto, and Snyder each found that Branch failed to state a plausible retaliation claim against Grannis. These magistrate judges concluded that nothing linked a failure to correct a violation, a failure to investigate, and the denial of the grievance as untimely with any protected conduct by Branch. After review, the Court agrees with these analyses. Branch's factual allegations did not plausibly show that Grannis's denial of Branch's appeal, or his alleged failure to investigate the appeal, was because Branch had engaged in any form of protected conduct. Indeed, in none of Branch's complaints did he allege that Grannis was aware of any protected activity by Branch. Therefore, no plausible First Amendment claim was ever stated against Grannis, and it was appropriate to dismiss that claim against Grannis with prejudice after Branch failed to correct the deficiencies.

        c.      Defendant Mendoza-Powers

Judges Wunderlich, Oberto, and Snyder found that Branch failed to state a plausible First Amendment claim against Mendoza-Powers. After review, the Court agrees with the analyses of these judges. No factual allegations demonstrated that intra-facility transfers within ASP constituted "adverse action" (as found by Judge Wunderlich). Relatedly, intra-facility transfers

1 would appear to cause at best a minimal amount of harm and thus, would not support a plausible
2 First Amendment claim. See Watison, 668 F.3d at 1114. Also, there were no factual allegations
3 that plausibly indicated that Mendoza-Powers ignored or denied his requests for a transfer from
4 ASP because Branch had engaged in some form of constitutionally protected conduct (as found by
5 Judges Oberto and Snyder). Therefore, no plausible First Amendment claim was ever stated
6 against Mendoza-Powers, and it was appropriate to dismiss that claim against Mendoza-Powers
7 with prejudice after Branch failed to correct the deficiencies.

### d. Defendant Mancinas

Judges Wunderlich, Oberto, and Snyder found that Branch failed to state a plausible First Amendment claim against Mancinas. After review, the Court agrees with the analyses of these judges. No factual allegations demonstrated that intra-facility transfers within ASP constituted "adverse action" (as found by Judge Wunderlich). Relatedly, intra-facility transfers would appear to cause at best a minimal amount of harm and thus, would not support a plausible First Amendment claim.[2] See Watison, 668 F.3d at 1114. Also, no allegations sufficiently indicated that Mancinas (or any Defendant) was involved in spreading rumors that Branch was a "snitch" or a "baby raper," and there are few details that explain what Mancinas failed to do or what remedies were available to address a transfer that did not comply with CDC regulations (as found by Judge Oberto). Finally, no factual allegations plausibly connected Mancinas to any adverse actions because Branch had engaged in some form of protected conduct. Therefore, no plausible First Amendment claim was ever stated against Mancinas, and it was appropriate to dismiss that claim against Mancinas with prejudice after Branch failed to correct the deficiencies.

### e. Defendant Umphenour

Each Magistrate Judge found that Branch's complaints stated a First Amendment retaliation claim against Umphenour based on Umphenour's failure to protect or intervene when Branch was assaulted by other inmates. This claim was tried to a jury. Because this claim was resolved by the jury, the screening orders were harmless.

---

[2] Additionally, the allegations do not sufficiently indicate that any of Branch's transfers failed to advance a legitimate penological purpose. See Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994).

Branch also alleged in his original complaint that Umphenour sabotaged, vandalized, destroyed, and distributed his property to other inmates. Judge Wunderlich found that no allegations tied Umphenour's acts to any protected conduct by Branch. After amended complaints were filed, Judge Oberto found that Branch had stated a plausible claim against Umphenour, but Judges Snyder and Austin found that no plausible claim was stated. In the amended complaints, Branch alleged that Umphenour was responsible for gathering and inventorying his property as part of the transfer from ASP to Mule Creek. When Branch's property arrived, it was documented as having been "sabotaged," and Branch alleges that Umphenour was the person who sabotaged the property. Branch alleged that Umphenour vandalized, destroyed and dispersed his property in retaliation for filing a sworn declaration in support of a fellow inmate's assault and battery grievance against an ASP officer. Branch also alleged that Umphenour said that Branch would be "dealt with" for filing the supporting declaration. Branch did not allege that Umphenour's conduct had or would have a chilling effect on the exercise of First Amendment rights. Cf. Rhodes v. Robinson, 408 F.3d 559, 567 n.11 (9th Cir. 2005).

After review, the Court concludes that Branch is alleging that Umphenour "sabotaged" his personal property by destroying or vandalizing it and that Umphenour did so because Branch had filed a declaration in support of an inmate grievance involving assault by ASP personnel.[3] The allegation is supported in part by Branch's allegation that Umphenour said that Branch would be "dealt with" for filing the declaration. The "dealt with" statement by Umphenour, combined with the allegations of Umphenour's duties and the direct allegation that Umphenour destroyed or vandalized property, is sufficient at the pleading stage to link Umphenour with some kind of damage to Branch's property because of protected conduct. However, the nature of the adverse act by Umphenour is unclear. No complaint identifies what property was harmed/sabotaged or the degree or nature of "sabotage," destruction, or vandalism. Depending on what was actually done to particular items (assuming no damage from the mailing or transit process), there may or may

---

[3] The Court understands that Branch has alleged that Umphenour distributed his property to other inmates. However, Umphenour gathered Branch's possessions for transport to Mule Creek and Branch was unaware of any damage until he arrived at Mule Creek. Since Umphenour remained at ASP and Branch was at Mule Creek, it is not reasonable or plausible to credit Branch's allegation that Umphenour distributed Branch's property to other inmates.

16

1 not be more than minimal damage. That is, the damage, vandalism, or sabotage may have been
2 very minor or affected only a few easily replaceable items, such that there was not more than
3 minimal damage or adverse action. The vagueness of the allegation of "sabotage" was first
4 identified by Judge Snyder and reiterated by Judge Austin. The TAC did nothing to elaborate on
5 the claim of sabotage, nor did it elaborate on any types of damage or vandalism or otherwise
6 plausibly demonstrate that Branch suffered some form of adverse action. Without adverse action,
7 there is no actionable retaliation. Therefore, no plausible First Amendment claim was ever stated
8 against Umphenour based on "sabotaged property," and it was appropriate to dismiss that claim
9 against Umphenour with prejudice after Branch made no changes to the claim in the TAC.

### 3. Fourteenth Amendment Claims

All magistrate judges concluded that Branch failed to allege a plausible Fourteenth Amendment claim against any defendant because his claims were governed by the Eighth Amendment (for failure to protect) or the First Amendment (for retaliation). The Court agrees with the magistrate judges' analyses. See Hall v. City of L.A., 697 F.3d 1059, 1068 ("Where a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing such a claim." (quoting Albright v. Oliver, 510 U.S. 266, 273 (1994)). Because no plausible Fourteenth Amendment claim was ever stated, dismissal of that claim against all defendants was appropriate.

### 4. Official Capacity Claims

Branch sued each Defendant in his official capacity, which is a suit against the CDCR and thus, the State of California. See Butler v. Elle, 281 F.3d 1014, 1023 n.8 (9th Cir. 2002). Magistrate Judges Snyder and Austin correctly found that no monetary relief was possible against the CDCR/Defendants in their official capacity by operation the Eleventh Amendment. See Brown v. California Dep't of Corr., 554 F.3d 747, 752 (9th Cir. 2009). Additionally, a jury found that Umphenour, Szalai, and Alvarez did not violate Branch's Eighth Amendment rights, and that Umphenour did not violate Plaintiff's First Amendment rights by failing to intervene and protect Branch. That verdict was affirmed by the Ninth Circuit. Additionally, the Court has found that all

17

other Constitutional claims that Branch alleged in his various complaints against the named Defendants were not plausible and were properly dismissed. In other words, Branch did not have plausible claims for constitutional violations against Grannis, Mancinas, and Mendoza-Powers. When a governmental employee's actions do not violate the Constitution, the employing governmental entity cannot be liable under *Monell*. Yousefian v. City of Glendale, 779 F.3d 1010, 1016 (9th Cir. 2015). Because no individual defendant violated Branch's constitutional rights, as determined by a jury or the screening process, Branch has no plausible *Monell* claims.[4]

### 5. Declaratory Relief

Magistrate Judges Snyder and Austin correctly held that a jury's verdict in favor of Branch would accomplish the same thing as a declaration that Defendants violated Branch's constitutional rights. Declaratory relief in such situations is redundant, and the Magistrate Judges properly dismissed the request. See National Audubon Society, Inc. v. Davis, 307 F.3d 835, 847 n.5 (9th Cir. 2002) (citing People for the Ethical Treatment of Animals v. Rasmussen, 298 F.3d 1198, 1202 n.2 (10th Cir. 2002)); see also Hernandez v. Skinner, 383 F.Supp.3d 1077, 1088 (D. Mont. 2019).

### 6. Conclusion

The Court has reviewed Branch's original complaint, first amended complaint, second amended complaint, and third amended complaint, as well as the corresponding screening orders by Magistrate Judges Wunderlich, Oberto, Snyder, and Austin. The Court does not agree with every aspect of each screening order. However, the Court does not find that any errors in the screening process harmed Branch. From the original complaint through to the third amended complaint, Branch continued to allege the same three causes of action against the same defendants. When this case finally proceeded against Umphenour on a First Amendment claim and Umphenour, Alvarez, and Szalai on an Eighth Amendment claim, no other plausible causes of action had been pled. Given that Branch had submitted four complaints, and that problems

---

[4] To the extent that Branch is attempting to allege a general retaliation policy within the CDCR, he has failed to allege facts to establish that such a policy exists. Plaintiff does not allege that an official policy exists to retaliate against inmates but relies on individual acts of different prison officials that he contends are retaliatory. Branch's conclusory allegations of individual retaliatory action are not sufficient to state a plausible claim that an overarching policy or custom of retaliation exists, particularly as there was only one plausible retaliation claim pled. Iqbal, 556 U.S. at 678.

18

identified by the various Magistrate Judges had not been corrected by the time of the third amended complaint, dismissal of the inadequately pled claims with prejudice/without leave to amend was proper. See Garmon, 828 F.3d at 842. This case proceeded to trial on the only plausible causes of action. Therefore, there is no basis to reopen this case for further proceedings because of the screening orders issued by the Magistrate Judges.

**ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion to withdraw consent (Doc. Nos. 198, 199) is DENIED;
2. Relief based on the Magistrate Judges' screening orders is NOT WARRANTED;
3. Defendants Grannis, Mendoza-Powers, and Mancinas are DISMISSED without leave to amend for failure to state a claim;
4. Plaintiff's First Amendment retaliation claim against Defendants Szalai and Alvarez is DISMISSED without leave to amend for failure to state a claim;
5. Plaintiff's Frist Amendment retaliation claim against Defendant Umphenour based on "sabotage" to Plaintiff's property is DISMISSED without leave to amend for failure to state a claim;
6. Plaintiff's official capacity claims are DISMISSED without leave to amend for failure to state a claim;
7. Plaintiff's claim for declaratory relief is DISMISSED without leave to amend as redundant; and
8. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated:  January 24, 2020

SENIOR DISTRICT JUDGE