# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LOUIS BRANCH,<br><br>    Plaintiff,<br><br>    v.<br><br>D. UMPHENOUR, et al.,<br><br>    Defendants. | Case No. 1:08-cv-01655-SAB (PC)<br><br>ORDER FOLLOWING REMAND FROM THE NINTH CIRCUIT COURT OF APPEALS AND GRANTING PLAINTIFF LEAVE TO FILE A FOURTH AMENDED COMPLAINT<br><br>(ECF No. 103) |

Louis Branch ("Plaintiff"), a state prisoner proceeding *pro se* and *in forma pauperis*, filed this civil rights action pursuant to 42 U.S.C. § 1983.

On April 16, 2021, the United States Court of Appeals for the Ninth Circuit remanded this action finding that the dismissal of Plaintiff's third amended "complaint with prejudice based solely on the lengthy screening process before magistrate judges, during which the 'problems identified by the various [m]agistrate [j]udges had not been corrected' despite [Plaintiff's] repeated amendments" was improper and directed that Plaintiff be allowed to further amend his complaint. (ECF No. 355, at 7-8.) The mandate issued on May 10, 2021. (ECF No. 357.)

Because of the lengthy and somewhat complicated procedural history of this case, the Court will recite only the proceedings at issue pursuant to the Ninth Circuit April 16, 2021, decision.

1

On September 16, 2013, the magistrate judge screened Plaintiff's third amended complaint and found that Plaintiff stated a cognizable claim against Defendants Umphenour, Szalai, and Alvarez for deliberate indifference to Plaintiff's safety in violation of the Eighth Amendment, and against Defendant Umphenour for retaliation in violation of the First Amendment. (ECF No. 103.)

On January 30, 2017, this case proceeded to a jury trial on Plaintiff's deliberate indifference claim against Defendants Umphenour, Szalai, and Alvarez, and on Plaintiff's retaliation claim against Defendant Umphenour. The jury returned a verdict in favor of all Defendants February 1, 2017. (ECF No. 317.)

The case is now before the Court for further screening regarding other retaliation claims raised by Plaintiff in the third amended complaint. (ECF No. 94.)

**I.**

**SCREENING REQUIREMENT**

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B); see also 28 U.S.C. § 1915A(b).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights. Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding *pro se* in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Wilhelm v. Rotman, 680 F.3d

1113, 1121 (9th Cir. 2012) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

## II.

## SUMMARY OF THIRD AMENDED COMPLAINT[1]

In August of 2002, at San Quentin State Prison (SQSP), an investigation was initiated based on Plaintiff's allegations that the California Department of Corrections and Rehabilitation (CDCR) had a policy of retaliation against him for exercising his rights. (Third Am. Compl. at 5, ECF No. 94.) In November 2002, at Avenal State Prison (ASP), Plaintiff was interviewed as part of the investigation and immediately afterward was subjected to retaliatory conduct by the filing of fraudulent reports, denial of access to the law library, physical abuse, and unlawful confiscation of property. (Id. at 5-6.)

In May 2003, Plaintiff was transferred to the California Training Facility-Soledad (CTF) where a known enemy of Plaintiff was housed. (Id. at 6.) Plaintiff was accused of "being a 'Jailhouse lawyer' and a 'shit stirring troublemaker' who had 'worn out [his] welcome at Avenal." (Id.) Upon arriving at CTFS, Plaintiff requested that he be transferred to SQSP or California Men's Facility-Vacaville so he could be close to his sole surviving family member. (Id.) Plaintiff's pending habeas corpus petition in Monterey County resulted in his transfer to Folsom State Prison (FSP). (Id. at 7.)

When Plaintiff arrived at FSP in January 2004, Plaintiff requested to be transferred to SQSP and the request was granted. However, his assigned counselor forged a signature to have

---

[1] The Court includes the entirety of Plaintiff's factual allegations as set forth in the Court's September 16, 2013 screening order solely for purposes of background information; however, the only claims at issue in this action are the specific retaliation claims discussed below, as all other claims have been adjudicated properly on the merits.

3

the transfer denied. Plaintiff filed a citizen's complaint. (Id. at 7.) In April 2004, Plaintiff's assigned counselor retaliated against Plaintiff by arranging for him to be transferred to ASP, in violation of the emergency transfer protocol. (Id.)

Plaintiff was transferred back to ASP in May 2004. (Id.) Plaintiff informed Powers that Mancinas had engaged in retaliatory conduct toward Plaintiff in the past, his transfer to ASP was unlawful, and he wanted to be transferred to SQSP or CMF-Vacaville. (Id. at 8.) When Powers did not respond to Plaintiff's complaints, Plaintiff filed a grievance against Mancinas. (Id.) Plaintiff appeared before the classification committee and informed them of his safety concerns. (Id.) The committee referred Plaintiff's case to Mancinas for remedial action. (Id.) "Mancinas failed and refused to perform his duty to 'effect adherence to classification procedures and goals' for Folsom's inappropriate "Emergency' transfer to Avenal." (Id. at 9-10.)

In June 2004, Plaintiff submitted a sworn declaration that he had witnessed an inmate being battered and assaulted by an ASP officer. (Id. at 9.) Defendant Umphenour confronted Plaintiff and said he "would be 'dealt with' for submitting 'a false declaration against an officer.'" (Id.) Immediately thereafter, ASP officials caused Plaintiff to be transferred within the prison five times in two weeks" amid the calumny and obloquy that [p]laintiff was a 'snitch' and a 'baby raper.'" (Id.) Each of Plaintiff's verbal and written pleas resulted in Plaintiff being transferred to another facility or building. (Id.) These transfers "virtually guaranteed" that Plaintiff's grievances would not be responded to because they would be lost, forgotten, misplaced, or not investigated due to being re-routed. (Id.)

After Plaintiff was transferred to Building 250 he was stabbed four times, bludgeoned about the head, and beaten to semi-consciousness while defendants Umphenour, Szalai, and Alvarez watched without intervening. (Id. at 9-10.) Plaintiff was then hospitalized and placed in segregation. (Id. at 10.) Defendant Umphenour was to gather and inventory Plaintiff's personal property. (Id.)

In August 2004, Plaintiff was transferred to Mule Creek State Prison (MCSP). (Id. at 10.) When Plaintiff arrived at MCSP, officials received his personal property and documented that it had been "sabotaged." (Id.) After being transferred to MCSP, Grannis denied his appeal

at the third level as untimely even though it was submitted timely. (Id.)

In January 2005, Plaintiff was authorized to transfer back to ASP. (Id. at 10.) The day before the transfer was to occur, the order was rescinded by Warden Bunnell. (Id.) On May 10, 2005, Plaintiff filed a request for an investigation by the Office of Inspector General but did not receive an affirmative respond to his request. (Id. at 11.) Plaintiff alleges there was a policy and custom of retaliatory acts due to his efforts to access the courts and grievance system that is shown by Grannis, Powers, and Mancincas' failure "to take any remedial steps after being admonished regarding the violations." (Id.)

## III.
## DISCUSSION

### A.   Retaliation Claims

"Prisoners have a First Amendment right to file grievances against prison officials and to be free from retaliation for doing so." Watison v. Carter, 668 F.3d 1108, 1114 (9th Cir. 2012) (citing Brodheim v. Cry, 584 F.3d 1262, 1269 (9th Cir. 2009)).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). To state a cognizable retaliation claim, Plaintiff must establish a nexus between the retaliatory act and the protected activity. Grenning v. Klemme, 34 F.Supp.3d 1144, 1153 (E.D. Wash. 2014). Mere verbal harassment or abuse does not violate the Constitution and, thus, does not give rise to a claim for relief under 42 U.S.C. § 1983. Oltarzewski v. Ruggiero, 830 F.2d 136, 139 (9th Cir. 1987). In addition, threats do not rise to the level of a constitutional violation. Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987).

#### 1.   Defendant Umphenour

As stated by the Ninth Circuit, Plaintiff's retaliation claim against Defendant Umphenour fails because the mere statement that his property was "sabotaged" "gives no details about the

nature of the adverse action. Thus, there is no way to determine whether the damage was sufficiently serious to 'chill or silence a person of ordinary firmness from future First Amendment activities' or cause him to 'suffer[] some other harm that [was] more than minimal,' as [Plaintiff] would have to show to prevail on a retaliation claim." (ECF No. 355 at 4.) (citation omitted). Accordingly, Plaintiff is granted leave to amend his retaliation claim against Defendant Umphenour to set forth sufficient factual details relating to the alleged adverse action.

        2.      <u>Defendants Powers, Mancinas and Grannis</u>

The Ninth Circuit found that Plaintiff failed to state a cognizable retaliation claim against Defendants Powers, Mancinas and Grannis because the third amended complaint lacks allegations that these Defendants "were personally involved" in Plaintiff's transfers between facilities. (ECF 355 at 6.) Although Plaintiff contends that he informed Powers that Mancinas had engaged in retaliatory conduct toward Plaintiff in the past, his transfer to ASP was unlawful, and he wanted to be transferred to SQSP or CMF-Vacaville, he fails to demonstrate that these individuals were actually involved in the transfers between facilities. Accordingly, Plaintiff has failed to demonstrate these Defendants caused an adverse transfer because he filed inmate grievances and/or complaints.

        3.      <u>Defendants Szalai and Alvarez</u>

With regard to Defendants Szalai and Alvarez, the Ninth Circuit stated Plaintiff's retaliation claim failed because there were no allegations that these individuals "were aware of any protected First Amendment activity or that they acted because of such activity." (ECF 355 at 5.) The Court further stated that "[t]he only language in [Plaintiff's] TAC that addressed these elements of a retaliation claim was his statement that 'Szalai and Alvarez's deliberate indifference to plaintiff's attempted murder was consonant with a policy and custom of retaliation for plaintiff's exercise of his Fourteenth Amendment right to petition for redress.'" (<u>Id.</u>) However, a mere "allegation that their behavior was 'consistent with' retaliation, offering no facts that 'tend to exclude a plausible and innocuous alternative explanation,' is insufficient to overcome dismissal. (<u>Id.</u>) (citation omitted). Accordingly, Plaintiff is granted leave to amend to set forth factual allegations relating to the alleged "policy and custom" of retaliation by

1 Defendants Szalai and Alvarez.

## IV.

## CONCLUSION AND ORDER

For the reasons discussed, Plaintiff fails to state a cognizable claim for relief and shall be granted leave to file an fourth amended complaint to cure the deficiencies identified in this order, if he believes he can do so in good faith. See Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000). Plaintiff is advised that he may not add any new claims or defendants in the fourth amended complaint, and amendment is strictly limited to the alleged retaliatory events described above. Plaintiff's amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-79. Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations omitted). Finally, Plaintiff is advised that an amended complaint supersedes the original complaint. Lacey v. Maricopa Cnty., 693 F.3d 896, 927 (9th Cir. 2012). Therefore, Plaintiff's amended complaint must be "complete in itself without reference to the prior or superseded pleading." Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. The Clerk's Office shall send Plaintiff a civil rights complaint form;
2. Within thirty (30) days from the date of service of this order, Plaintiff may file a fourth amended complaint;
3. Plaintiff's fourth amended complaint shall not exceed twenty-five (25) pages in length; and

///
///
///
///
///
///

4. If Plaintiff fails to file an amended complaint in compliance with this order, the Court will recommend to a district judge that this action be dismissed consistent with the reasons stated in this order.

IT IS SO ORDERED.

Dated: __**May 19, 2021**__

UNITED STATES MAGISTRATE JUDGE